MANUEL A. GARCÍA LARRINUA ET AL., demandantes y recurridos, *v.* KAREN LICHTIG, demandada y recurrente.

*Número:* R-85-205        *Resuelto:* 23 de diciembre de 1986

*Pedro J. Córdova,* abogado de la recurrente; *José A. Figueroa Morales,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Los esposos codemandados Gerard y Madelyn Bryan eran dueños de dos (2) apartamentos contiguos localizados en el Condominio Mansiones Los Caobos identificados como los apartamentos 8-B y 8-C. Dicho condominio, localizado en Guaynabo, Puerto Rico, está sometido al régimen de propiedad horizontal. La descripción que de dichos apartamentos consta desde su inmatriculación en la sección correspondiente del Registro de la Propiedad es la siguiente:

URBANA: Propiedad Horizontal: Condominio Mansiones Los Caobos, *Apartamento 8-B*. Está situado en el lado Oeste y en el nivel ocho. Está enmarcado en un rectángulo de forma irregular que mide de ancho 29 pies por 35 pies 6 pulgadas de longitud y tiene además un rectángulo que mide de ancho 15 pies 4 pulgadas [, y] 12 pies 6 pulgadas de longitud, *tiene un área total de 1,221.12 pies cuadradados, equivalentes a 113.49 metros cuadrados*. Limita por su frente norte con paredes exteriores de hormigón hacia el área de jardinería Norte, por el Sur con el corredor de entrada a los apartamentos y elevadores, por el este, con paredes interiores de hormigón que lo separa del apartamento 8-C y por el oeste con paredes interiores de hormigón que lo separa del apartamento 8-A. *Este apartamento está formado por sala-comedor, con terraza mirando al norte, pasillo interior, dos dormitorios, uno con dos closets y tocador con lavamanos, otro con un closet y un tablillero y un salón de estar con un closet, además tiene este apartamento dos baños, linen closet, closet lavandería en el pasillo interior, cocina con closet, despensa*. Le corresponde el espacio de estacionamiento marcado 8-B. Le corresponde una participación en los elementos comunes generales de 1.23 %.

Inscrit [a] al folio 105 del tomo 216 de Guaynabo, finca número 3,195.

·   ·     ·      ·     ·     ·     ·     ·

URBANA: Propiedad Horizontal: Condominio Mansiones Los Caobos. *Apartamento 8-C*. Este apartamento está situado en [el] nivel ocho. Está formado por dos rectángulos de forma irregular y en forma de 'L' invertida, con un ancho (lado mayor) de 29 pies y de 13 pies 8 pulgadas (lado menor) una longitud de 25' (lado mayor) y 12'6" (lado menor). *Tiene un área total de 533.38 p/c, equivalentes a 49.57 m.c.* Linda por el frente Norte en una longitud de 12'6" con paredes interiores de hormigón que lo separan del apartamento 8-B y con interiores del edificio hacia el área de jardinería Norte, por el Sur, con el vestíbulo de acceso a los apartamentos y elevadores, por el este, con paredes interiores de hormigón que lo separan del apartamento 8-D y por el oeste con paredes interiores de hormigón que lo separan del apartamento 8-B. *Está formado por sala-comedor, con terraza*

*mirando hacia el Norte, con baño, "linen closet", cocina con closet, despensa y closet laundry.* Le corresponde el estacionamiento 8-C y en los elementos comunes generales 0.55%.

Se halla inscrita al folio 240 del tomo 568 finca 22,966. (Énfasis suplido.)

Los codemandados Bryan, en algún momento luego de adquirir los dos apartamentos, llevaron a cabo una modificación de dichas unidades. La misma consistió en anexar al apartamento 8-C el "salón de estar con closet" que pertenecía al apartamento 8-B, el cual salón tenía una cabida aproximada de doscientos sesenta (260) pies cuadrados. Con motivo de la obra realizada, la unidad 8-C se convirtió de un "estudio" (*efficiency*) a un "apartamento de una habitación". Los trabajos de remodelación se hicieron sin la aprobación del consejo de titulares del referido condominio, sin que hubiera aprobación de plano alguno por la Administración de Reglamentos y Permisos, sin que se hubieran consignado las nuevas descripciones de los apartamentos en escritura pública, y sin que se hubiese hecho inscripción alguna de dichas modificaciones en el Registro de la Propiedad correspondiente.

El 21 de agosto de 1980 los esposos Bryan vendieron, mediante escritura pública, el apartamento 8-C a la codemandada recurrente Karen Lichtig por la suma de $35,320.07. En esa misma fecha —igualmente mediante escritura pública— los esposos Bryan vendieron el apartamento 8-B por la cantidad de $55,399.49 a la Sra. Milagros Amill, la cual compareció en dicha escritura como testaferra de los demandantes recurridos Manuel Antonio García y Carmen Miriam Sureda por razón de que estos últimos, a la fecha de la otorgación de la escritura, no estaban casados entre sí y no "cualificaban" para la otorgación de un préstamo hipotecario. Posteriormente —el 12 de junio de 1981— y luego de haber contraído matrimonio los demandantes recurridos, la señora Amill otorgó "escritura de traspaso del inmueble" a nombre de los mencionados demandantes.

Mediante demanda sobre "reivindicación o resolución, de contrato", radicada el 12 de enero de 1982, los esposos García-Sureda acudieron ante el Tribunal Superior de Puerto Rico, Sala de Bayamón. En la misma expresaron, en síntesis y en lo pertinente, que los esposos Bryan les "representaron en todo momento que el apartamento 8-B contenía un área superficial de 1221.12 pies cuadrados, cuando lo cierto es que sólo tiene un área superficial de 961 pies, pues la diferencia fue anexada al apartamento 8-C", y que tanto los esposos Bryan como la codemandada Lichtig se niegan a "devolverle" la referida área. Por último, solicitaron del tribunal de instancia que dictara sentencia "condenando a los demandados a devolver a los demandantes el área ilegalmente anexada al apartamento 8-C, en la alternativa, pronuncie la resolución del contrato de venta de dicho apartamento, con el resarcimiento de los daños, más las costas, gastos y honorarios de abogado". La posición asumida por los codemandados Bryan por su parte, en síntesis y en lo pertinente, fue a los efectos de que los demandantes tuvieron la oportunidad de ver el apartamento que finalmente adquirieron antes de así hacerlo y que "pactaron la compra de lo existente". La codemandada Lichtig, en lo pertinente, se limitó a aceptar que había adquirido un apartamento de una habitación de los codemandados Bryan, negando todas las demás alegaciones. Radicó, en adición, demanda de coparte contra los esposos Bryan solicitando del foro de instancia que, de prevalecer los demandantes, condenara a los Bryan a resarcirle "lo que en ley le corresponda".

Ante ese cuadro de hechos, el tribunal de instancia declaró con lugar una solicitud de sentencia sumaria radicada por la parte demandante. Expresando que la modificación realizada no podía surtir "efecto legal alguno" por razón de que la misma contravenía las disposiciones del Art. 32-A de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1292j-1, dicho foro resolvió que procedía la restauración de los apartamentos a su diseño original. Decretó, en adición, que los gastos de dicha

restauración serían de cargo de "los demandados". Por último, el referido tribunal declaró sin lugar la demanda de coparte radicada por la codemandada Lichtig contra los esposos Bryan por el fundamento de que en el presente caso la "responsabilidad de sanear es inexistente" ya que Lichtig "no adquirió ni pagó por el área de 260 p.c., l[a] cual pertenece al apartamento 8-B"; ello debido, según razonó el referido foro, a que al ella comprar "sabía, o debía saber, por las constancias del Registro de la Propiedad, que esa área de 260 p.c. no le pertenecía al apartamento 8-C".

Acudió en revisión ante este Tribunal únicamente la codemandada Karen Lichtig. Declaramos, originalmente, "no ha lugar" al recurso radicado. Posteriormente, en reconsideración, le concedimos término a la parte demandante recurrida para que mostrara causa por la cual no debíamos expedir el auto solicitado y dictar sentencia revocatoria de la dictada por el foro de instancia. La parte recurrida ha comparecido. Resolvemos.

## I

■ Como es sabido, el régimen de propiedad horizontal está rigurosamente supeditado al requisito de inscripción registral. En otras palabras, para que exista dicho régimen en relación con una propiedad en particular, el mismo tiene que constar inscrito en la sección correspondiente del Registro de la Propiedad. Véase Art. 2 de la Ley Núm. 104 del 25 de junio de 1958 (31 L.P.R.A. sec. 1291).

■ La escritura pública que a esos efectos tiene que otorgarse deberá contener o expresar las siguientes circunstancias:

(a) Descripción del terreno y descripción general de lo allí construido, con expresión de sus áreas respectivas y materiales de construcción.

(b) *Descripción de cada apartamiento y número de cada uno, con expresión de sus medidas, situación, piezas de que*

*conste,* puerta principal de entrada y lugar con el cual inmediatamente comunique, y demás datos necesarios para su identificación.

(c) Descripción de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados a cierto número de apartamientos, con expresión de cuáles sean esos apartamientos.

(d) Indicación clara del destino dado al inmueble y a cada uno de sus apartamientos.

(e) *Superficie de la totalidad de los apartamientos en el inmueble y superficie de cada apartamiento, fijándose de acuerdo con estas medidas el porcentaje que tengan los propietarios en los gastos, ganancias y derechos en los elementos comunes.*

(f) Lo relativo a la administración del inmueble, en su caso.

(g) Y cuanto más se refiera al inmueble y sea de interés hacerlo constar. (Énfasis suplido.) 31 L.P.R.A. sec. 1292.

■ Debe señalarse, en adición, que según las disposiciones en 31 L.P.R.A. sec. 1292b la "copia certificada de la escritura que origine la primera inscripción del inmueble total y la copia certificada de la que origine la primera inscripción del apartamiento individualizado, para su inscripción en el Registro de la Propiedad, *deberán tener agregadas copias completas y fieles de los planos de dicho inmueble o de los planos del apartamiento de que se trate, según los casos, para que queden archivados en el Registro de la Propiedad".* (Énfasis suplido.)

■ Una vez se ha sometido una propiedad (conjunto de apartamentos o unidades) al régimen de propiedad horizontal, cada apartamento o unidad se convierte en "finca independiente" y "podr[á] individualmente transmitirse y gravarse y ser objeto de dominio o posesión, y de toda clase de actos jurídicos [í]nter[ ]vivos o mortis causa, con independencia total del resto del inmueble de que form[a] parte, y los títulos correspondientes serán inscribibles en el Registro de la

Propiedad de acuerdo con lo dispuesto en este Capítulo y la Ley Hipotecaria", 31 L.P.R.A. sec. 1291b.

■ Por otro lado, cualquier segregación o agrupación que los titulares de esos apartamentos interesen llevar a cabo respecto a los mismos, deberá ser realizada conforme las disposiciones del Art. 32-A de la citada ley, 31 L.P.R.A. sec. 1292j-1, el cual dispone:

A menos que la escritura matriz, el Reglamento del inmueble o la Administración de Reglamentos y Permisos específicamente lo prohíban, *los apartamientos y sus anejos podrán ser objeto de división material, mediante segregación,* para formar otra u otras unidades susceptibles de aprovechamiento independiente; *o podrán ser aumentados por agrupación de otras partes colindantes del mismo inmueble;* pero ninguna segregación o agrupación así realizada tendrá el efecto de variar el destino o uso dispuesto en la escritura matriz para el apartamiento o apartamientos que quedaren modificados.

*En tales casos se requerirá, además el consentimiento de los titulares afectados, la aprobación del Consejo de Titulares,* correspondiéndole al Director o a la Junta de Directores la fijación de los porcentajes o cuotas de participación, con sujeción a lo dispuesto en la sec. 1291f de este título y sin alterar los porcentajes correspondientes a los restantes titulares. *La nueva descripción de los apartamientos afectados, así como los porcentajes correspondientes, deberán consignarse en la escritura pública de segregación o agrupación que se otorgue, la cual no surtirá efecto hasta tanto se inscriba en el registro particular de cada una de las fincas filiales afectadas, dejándose copia certificada archivada en el Registro de la Propiedad, unida a la escritura matriz.* A dicha copia certificada se unirá un plano, certificado por un ingeniero o arquitecto, autorizado para la práctica de su profesión en Puerto Rico, que de modo gráfico indique claramente los particulares del apartamiento o apartamientos según resulten modificados. *Cuando se tratare de una segregación, dicho plano deberá también aparecer aprobado y*

*certificado por la Administración de Reglamentos y Permisos.* (Énfasis suplido.)

■ Como podemos notar, de no existir prohibición expresa al efecto, el titular o titulares de uno o más apartamentos de un edificio sujeto al régimen de propiedad horizontal pueden llevar a efecto respecto a los mismos alteraciones tales como segregaciones o agrupaciones, siempre y cuando las mismas se consignen en escritura pública. Para ello, sin embargo, necesitarán contar con el consentimiento del consejo de titulares del condominio y la aprobación por parte de la Administración de Reglamentos y Permisos de un plano certificado por ingeniero o arquitecto autorizado a ejercer su profesión en Puerto Rico.

■ Merece destacarse el hecho de que la citada disposición legal establece expresamente que dicha segregación o agrupación tendrá que elevarse a escritura pública y la misma "no surtirá efecto hasta tanto se inscriba en el registro particular de cada una de las fincas filiales afectadas, dejándose copia certificada archivada en el Registro de la Propiedad, unida a la escritura matriz". 31 L.P.R.A. sec. 1292j-1.

## II

■ De las disposiciones antes transcritas surge con meridiana claridad que nos encontramos no sólo ante la llamada "inscripción constitutiva" [1] sino que, en relación con la Ley

---

[1] Al respecto, nos ilustra Roca Sastre:

". . . Es *constitutiva* la inscripción cuando la misma es requisito necesario o *sine qua non* para que la transmisión del dominio de inmuebles o la constitución o transmisión de un derecho real inmobiliario se produzca . . . .

"Cuando la inscripción es constitutiva, asume el valor de factor, elemento o requisito indispensable para que el título traslativo o constitutivo *produzca* este efecto traslativo o constitutivo. El asiento no sirve solamente para exteriorizar la existencia de una traslación o gravamen, sino que concurre como ingrediente o elemento esencial para que el fenómeno traslativo o constitutivo tenga lugar en la realidad de la vida jurídica." (Énfasis en el original.) R. M. Roca Sastre, *Derecho Hipotecario*, 5ta ed., Barcelona, Ed. Bosch, 1954, T. I, pág. 147 *et seq.*

de Propiedad Horizontal vigente en nuestra jurisdicción, el Registro de la Propiedad tiene las características de un sistema catastral. Así lo reconocimos en *Arce* v. *Caribbean Home Const. Corp.*, 108 D.P.R. 225, 256–257 (1978), donde expresamos:

> A tal efecto, comentando esta disposición, el Doctor Aguirre acertadamente nos dice que "[l]a Ley, pues ha establecido un verdadero sistema catastral para los edificios en propiedad horizontal." *Op. cit.*, 335. En aquellos países en que existe el sistema de catastro, éste comprende "toda operación cuya finalidad y resultado sea la determinación de los valores y extensión de los fundos". I *Diccionario de Derecho Privado*, 828 (1954). Su formación requiere operaciones técnicas y su importancia radica en "su carácter complementario del Registro de la Propiedad, ya que por constituir el catastro una descripción gráfica de los fundos o edificaciones pertenecientes a cada propietario, completa y perfila definitivamente la finalidad del Registro de la Propiedad, *garantizando la existencia real de las fincas y de sus límites,* que en el Registro de la Propiedad sólo constan en un simple asiento. En tal sentido, el catastro cumple el importantísimo papel de proporcionar un título real de propiedad, *gráfico* y *descriptivo,* complemento eficacísimo y necesario de la mera titulación literal que el Registro de la Propiedad ofrece." *Ibid.* (Bastardillas nuestras.)

> . . . . . . . . .

> Al reflexionar sobre los propósitos de este requisito en nuestra ley —unir al proceso de protocolización de la escritura pública dichos planos— *advertimos que el Legislador ha partido de la premisa de que habrá correspondencia entre la relación expuesta en la escritura descriptiva del edificio y los planos que gráficamente ilustran tal descripción.* . . .

> . . . . . . . . .

> *Y concluye, que la ley persigue de este modo ". . . garantizar al comprador que no se alterara su porcentual,* la línea de construcción ni las superficies del edificio. . . . Si al final la autoridad administrativa . . . no estuviera de acuerdo con el proyecto del constructor, se crearía un conflicto, y se va a crear, pero no hay dudas que en este caso habrá que es-

tarse al proyecto, con la consiguiente responsabilidad del profesional interviniente, *si no sería muy fácil burlar la ley, y estaría desvirtuada la intención tuitiva de la norma"*. Palmiero, *op. cit.*, 123.... (Énfasis suplido.)

Lo anteriormente expresado es la razón por la cual en el caso de la Ley de Propiedad Horizontal no es de aplicación la norma general de que el Registro de la Propiedad no es garantizador de cabida. Esto es, de ordinario, el Registro no da fe de las características físicas de los inmuebles. Véanse: L. Mojica Sandoz, *El exceso de cabida de las fincas inscritas en el registro de la propiedad,* 28 Rev. C. Abo. P.R. 763 (1968); D. Martínez Irizarry, *El principio de la fe pública registral en Puerto Rico,* 28 Rev. C. Abo. P.R. 719, 751 (1968), y R. M. Roca Sastre, *Derecho Hipotecario,* 6ta ed., Barcelona, Ed. Bosch, 1968, T. I, pág. 618.

Teniendo el Registro en cuanto a dicha ley las características de un catastro, la realidad extrarregistral tiene que corresponder con la que surge del Registro. Es por ello que al comprador de un apartamento de un edificio que está sometido al régimen de la Ley de Propiedad Horizontal se le puede oponer e imputar, por ficción de ley, el conocimiento no sólo de las constancias del Registro en lo referente a la titularidad del mismo, sino que se le imputa el conocimiento de las "circunstancias particulares", tales como cabida o superficie total, del apartamento individual de que se trate. (²)

---

(²) Ahí la razón por la cual, como hemos visto anteriormente, la Sec. 1292 del Tít. 31 de L.P.R.A. exige que la escritura matriz que se otorgue debe contener o expresar, entre otras la "[d]escripción de cada apartamiento y número de cada uno, con expresión de sus medidas, situación, piezas de que conste ...", y la "[s]uperficie de la totalidad de los apartamientos en el inmueble y superficie de cada apartamento ...", y la razón del requisito exigido por la Sec. 1292b del mismo título a los efectos de que las copias certificadas de la escritura que origina la primera inscripción del inmueble y de la escritura que origina la primera inscripción del apartamiento individualizado "deberán tener agregadas copias completas y fieles de los planos de dicho inmueble o de los planos del apartamento de que se

■ Y es que no queda otra alternativa que no sea la de que la realidad extrarregistral coincida con la que surge de las constancias del Registro de la Propiedad. Dada la naturaleza del sistema, el pietaje que le puede "faltar" a uno de los apartamentos por necesidad tiene que estar errónea o ilegalmente anexado a otro de los apartamentos o como parte de los elementos comunes del edificio. Además, por mandato expreso del inciso (e) de la antes transcrita Sec. 1292 del Tít. 31 de L.P.R.A. el porcentaje que cada condómino tiene relativo a los gastos, ganancias y derechos en los elementos comunes se fijará de acuerdo con las "medidas" que tenga su apartamento.

■ Como consecuencia forzoza de todo lo anteriormente expresado, al comprador de un apartamento de un edificio sujeto al régimen de nuestra Ley de Propiedad Horizontal se le imputa —por ficción de ley y de acuerdo con el principio de la fe pública registral— el conocimiento de la cabida o superficie del apartamento que surge de las constancias del Registro de la Propiedad y, aún más importante, "compra de acuerdo a ello", *Arce* v. *Caribbean Home Const. Corp.*, ante.

■ La aplicación de las antes transcritas disposiciones legales y de los mencionados principios nos llevan a concluir que la modificación o alteración de los apartamentos en controversia que los codemandados Bryan —dueños únicos en un momento determinado de los referidos apartamentos— llevaron a cabo no puede prevalecer. No hay duda de que los trabajos por ellos realizados cualifican como la "segregación y agrupación" que está expresamente regulada por la antes transcrita Sec. 1292j-1 del Tít. 31 de L.P.R.A. No habiéndose cumplido con ninguno de los requisitos que exige la citada disposición legal para así hacerlo, por mandato expreso de la Ley, lo realizado por ellos es inexistente a todos los efectos legales.

---

trate, según los casos, para que queden archivados en el Registro de la Propiedad".

En adición a lo antes expresado, surgiendo del Registro de la Propiedad que la cabida del apartamento 8-C del Condominio Mansiones Los Caobos era una correspondiente a "un área total de 533.38 p/c, equivalentes a 49.57 m.c.", la codemandada recurrente Lichtig "sabía o debía saber" que al apartamento que compró de los codemandados Bryan no le correspondían los doscientos sesenta (260) pies cuadrados adicionales que estos últimos le habían anexado al mismo. No tiene derecho legal a dicha área.

No habiendo acuerdo posible entre los dos titulares actuales de los apartamentos en controversia procede que en su día y por imperativo de ley —una vez advenga final y firme la sentencia que eventualmente se dicte en el presente caso— se restauren los apartamentos a su diseño original. *Cf. Arce* v. *Caribbean Home Const. Corp.*, ante.

Esto es y debe ser así debido a las características particulares de la convivencia en un edificio sujeto al régimen de la Ley de Propiedad Horizontal. No puede fomentarse, como cuestión de política pública, la indiscriminada y no autorizada alteración de los apartamentos que componen un edificio sujeto a dicho régimen. Dichas alteraciones pueden poner en riesgo no sólo la vida y seguridad de los dueños de esos apartamentos, sino que la de los otros condóminos. Debe mantenerse presente que la alteración de un apartamento no sólo puede afectar la estética del edificio, sino que la solidez estructural del mismo. Posiblemente esta sea una de las situaciones donde más claramente es de aplicación el principio a los efectos de que los derechos de una persona terminan donde comienzan los derechos de otra.

### III

Lo anteriormente resuelto: ¿causa que nazca, en su día, a favor de la recurrente Lichtig —y en contra de los esposos

Bryan— la acción rescisoria y la de indemnización consagrada en nuestro Código Civil? (³)

■ Como es sabido, el Art. 1364 del citado cuerpo legal dispone, en lo pertinente, que tendrá "lugar la evicción cuando se prive al comprador, por sentencia firme *y a virtud de un derecho anterior a la compra*, de todo o parte de la cosa comprada". (Énfasis suplido.) 31 L.P.R.A. sec. 3832. La doctrina mayoritaria sostiene que la causa de la evicción tiene que existir desde antes del momento en que se consuma el negocio jurídico y la misma tiene que ser imputable exclusivamente al vendedor o sus causantes. J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. 10, Vol. 1, págs. 283–284. Este autor sostiene que no puede hablarse de error cuando no ha habido ignorancia y que la ignorancia —por parte del comprador— es legalmente imposible cuando hay un registro público cuyo principal objetivo es evitar todo motivo de error en las transacciones. Manresa, *op. cit.*, págs. 328–329. Véanse, en adición, J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 12ma ed., Madrid, Ed. Reus, 1985, T. 4, pág. 31; J. Ossorio Morales, *Sobre una interpretación del artículo 1.483 del Código Civil*, 16 Rev. Der. Privado 150 *et seq.* (1929). Dicha posición cobra fuerza cuando consideramos que el Art. 1427 de nuestro Código Civil, 31 L.P.R.A. sec. 3961, establece que todo "lo dispuesto en esta parte [contrato de compra y venta] se entiende con sujeción a lo que respecto de bienes inmuebles se determine en la Ley Hipotecaria, Título 30".

■ Acorde con lo antes expresado, hemos resuelto —respecto a cargas o gravámenes hipotecarios— que así como al comprador le afecta la apariencia física de la servidumbre aun cuando la misma no se mencione en la escritura, tampoco

---

(³) Art. 1350 (31 L.P.R.A. sec. 3801 *et seq.*).

puede éste evadir el mismo efecto generado por la apariencia o exposición derivada de la publicidad registral, *Miralli* v. *Fullana Corp.*, 98 D.P.R. 330 (1970). Hemos resuelto, en adición, que el nacimiento de la acción rescisoria y la de indemnización provistas en el Art. 1372 del Código Civil, 31 L.P.R.A. sec. 3840, está subordinada a los principios de legalidad, publicidad y especialidad que informan el Derecho registral por así ordenarlo el citado Art. 1427 del Código Civil, y, que visto lo dispuesto por el Art. 23 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2101, a los efectos de que el Registro de la Propiedad es público para quienes tengan interés en averiguar el estado jurídico de los bienes inmuebles o derechos reales inscritos, si el comprador no "consulta" al Registro "no tendrá derecho a pedir rescisión del contrato ni indemnización". *García* v. *Rafael Durand & Assocs.*, 114 D.P.R. 440, 444 (1983).

En el presente caso, el vendedor —los esposos Bryan— fue el responsable de la "remodelación" realizada en los apartamentos en controversia. Como hemos visto, sin embargo, por ficción legal se le imputa a la recurrente Lichtig el "conocimiento" de la constancia registral al momento de ella comprar el apartamento 8-C y, más importante aún, el "conocimiento" de la discrepancia existente en ese momento entre la "realidad física" y la descripción registral. Igual que en el caso del gravamen hipotecario, al surgir del Registro de la Propiedad dicha situación, la recurrente Lichtig ,"conocía o debía conocer" la misma y, por lo tanto, como regla general no procede que se obligue al vendedor al saneamiento, *Miralli* v. *Fullana Corp.*, ante, por lo que los esposos Bryan, de ordinario, no vendrían obligados a responderle a la recurrente.

Ahora bien, en el citado caso de *García* v. *Rafael Durand & Assocs.*, ante, ratificamos la excepción que a la anterior regla general habíamos establecido en *Sánchez* v. *Coll*, 69 D.P.R. 925, 931 (1949) a los efectos de que "cuando el vendedor *asegura* que la finca se halla libre de cargas y *se obliga*

*al saneamiento* queda el comprador *excusado* —fiado en la *responsabilidad personal* de aquél— de la consulta al Registro ineludible en defecto de pacto expreso". (Énfasis suplido.) *García v. Rafael Durand & Assocs.*, supra, pág. 445. ([4])

No vemos razón alguna por la que dicha excepción no sea igualmente aplicable a situaciones como la que se plantea en el presente caso. En otras palabras, si el propietario de un apartamento de un edificio sometido al régimen de la Ley de Propiedad Horizontal, en la escritura pública mediante la cual vende el mismo, se obliga expresamente al saneamiento en caso de evicción y asegura ser dueño del apartamento según éste se describe en dicha escritura, en caso de que posteriormente el comprador sea "despojado" de parte de dicho apartamento en pleito de reivindicación por no concordar la "realidad física" de dicho inmueble con la descripción registral, el comprador podrá instar la correspondiente acción de saneamiento. ([5])

En su consecuencia, procede que se determine si a la recurrente Lichtig le aplica —respecto al derecho de saneamiento por evicción— la regla general antes reseñada, o por el contrario, le cobija la excepción a la misma. Recordemos que de acuerdo con el antes citado Art. 1364 del Código Civil, en lo pertinente, tendrá lugar la evicción cuando se prive al

---

([4]) En el escolio Núm. 7 de la referida decisión se expresa que el "texto clásico del pacto en la práctica notarial puertorriqueña", mediante la cual se logra la aplicación de la referida excepción lo es: " 'El vendedor se obliga expresamente al saneamiento en caso de evicción o gravamen oculto'." *García v. Rafael Durand & Assocs.*, 114 D.P.R. 440, 445 n. 7 (1983).

([5]) No podemos desvincular los principios generales del Derecho hipotecario de los criterios generales de la buena fe en la contratación. *Jordán-Rojas v. Padró-González*, 103 D.P.R. 813, 820–821 (1975). Así, cuando un vendedor incurre en representaciones y garantías, como las arriba indicadas, sobre el pietaje y cabida de un apartamento, la confianza depositada en ellos por el comprador merece protección en nuestro ordenamiento jurídico conforme al principio de la buena fe. *Berríos v. U.P.R.*, 116 D.P.R. 88 (1985).

comprador, *por sentencia firme*, de todo o parte de la cosa comprada. La demanda contra coparte que la recurrente radicara contra los esposos Bryan no "madura" hasta ese momento. No obstante, es permisible y contingente al resultado del pleito principal. *Rodón* v. *Fernández Franco*, 105 D.P.R. 368, 370–371 (1976). El tribunal de instancia deberá entender en la causa de acción presentada en la demanda contra coparte, y comenzar el trámite correspondiente, luego de la devolución de nuestro mandato en el caso de autos.

## IV

Consideramos, por último, las determinaciones del tribunal recurrido a los efectos de que los gastos de la restauración de los apartamentos a su diseño original son de cargo de "los demandados" y la imposición, en forma solidaria, a éstos de la suma de $3,000 por concepto de honorarios de abogado, determinaciones que cuestiona, en cuanto a ella se refiere, la recurrente Lichtig.

█ Cuando los esposos Bryan realizaron la remodelación de los apartamentos, ellos eran los titulares de ambos inmuebles. Ello impide que consideremos el asunto enmarcado dentro del concepto de edificante de "buena o mala fe", por cuanto el mismo conlleva implícitamente que la construcción sea realizada en propiedad ajena. Se trata, en realidad, de un edificante "en violación de ley". Esto es, las obras de construcción realizadas por los esposos Bryan, como hemos visto, fueron en violación de las disposiciones del citado Art. 32-A de la Ley de Propiedad Horizontal. No obstante el argumento de que al comprar el apartamento 8-C la recurrente Lichtig "sabía o debía saber" que lo realizado por los Bryan no era legal, somos del criterio que los gastos de restauración de los apartamentos deben ser de cargo exclusivo de los esposos Bryan; esto es, de los titulares que realizan las alteraciones ilegales. Razones de política pública aconsejan que así sea. Ello tiene

un efecto disuasivo y posiblemente evite la violación indiscriminada de la Ley de Propiedad Horizontal por parte de los propietarios de apartamentos sometidos al régimen de esta Ley.

■ La imposición de honorarios de abogado a la recurrente Lichtig resulta improcedente dado los hechos particulares del presente caso y la complejidad y lo novedoso de los planteamientos contenidos en el mismo. No creemos que haya habido, por su parte, la temeridad que nuestra jurisprudencia entiende que amerita la imposición de honorarios de abogado. *Caloca* v. *C.I.A.A.*, 108 D.P.R. 164 (1978); *Rodríguez* v. *John Hancock Mutual Life*, 110 D.P.R. 1 (1980); *Morales Garay* v. *Roldán Coss*, 110 D.P.R. 701 (1981).

Por las razones antes expresadas, *se expide el auto de revisión solicitado y se dictará sentencia modificatoria de la dictada por el tribunal de instancia en la forma y manera antes indicada, y así modificada, se confirma la misma, devolviéndose el caso a dicho foro para la continuación de los procedimientos compatibles con lo aquí resuelto.* [6]

El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Alonso Alonso concurren en el resultado sin opinión escrita, y el Juez Asociado Señor Hernández Denton concurre en el resultado con opinión escrita.

—O—

Voto concurrente emitido por el Juez Asociado Señor Hernández Denton.

Como las alteraciones a los apartamentos hechas por los esposos Bryan se efectuaron en contravención de los requisitos

---

[6] Debido a que los esposos Bryan no radicaron reconvención alguna contra los demandantes García Sureda —en donde pudieron haber "ampliado y elaborado" su alegación de que éstos "pactaron la compra de lo existente"— como tampoco recurrieron de la sentencia emitida, no es necesario pronunciarnos sobre la procedencia en derecho, si alguna, de dicha alegación.

de la Ley de Propiedad Horizontal, Art. 32-A, 31 L.P.R.A. sec. 1292j-1, las mismas no pueden permanecer. La Ley requiere que, cuando se segreguen o agrupen los apartamentos de un edificio sujeto al régimen de propiedad horizontal, se consignen dichas modificaciones en escritura pública y se obtenga el consentimiento de los titulares afectados y la aprobación del Consejo de Titulares.

El Art. 32-A de la Ley de Propiedad Horizontal fue incorporado en 1976 precisamente para permitir las segregaciones o agrupaciones de los apartamentos y para establecer un procedimiento que salvaguardara los intereses de los demás titulares del inmueble. Hasta la incorporación de ese artículo en la revisión efectuada en el 1976, no se sabía con certeza si la ley permitía estos cambios. Véase F. Hernández Denton, *La Ley de Propiedad Horizontal—un análisis de las enmiendas del 1976*, 44 Rev. C. Abo. P.R. 257, 271 (1983).

El Art. 32-A aprobado en el 1976 incorpora disposiciones del Art. 8 de la Ley de Propiedad Horizontal española de 1960. Mediante dicho artículo se quiere lograr que "ninguna segregación o agrupación así realizada ten[ga] el efecto de variar el destino o uso dispuesto en la escritura matriz" para los apartamentos envueltos. También permite que en la escritura matriz o el Reglamento se prohíba la segregación o agrupación de los inmuebles. Véase Informe conjunto a la Cámara de Representantes sometidos por las Comisiones de lo Jurídico Civil, Desarrollo y Vivienda, y Asuntos del Consumidor, P. de la C. 1862, Historial Legislativo, abril de 1976.

El propósito del Art. 32-A fue proteger tanto a los compradores potenciales de los apartamentos, como a los titulares de las otras unidades del edificio. Otorgó a éstos el poder de rechazar segregaciones o agrupaciones y los autorizó a fijar unas nuevas cuotas de participación sin alterar los porcentajes correspondientes a los restantes titulares. 31 L.P.R.A. sec. 1292j-1.

En este caso los Bryan violaron el mandato expreso de la Ley de Propiedad Horizontal. No obtuvieron la aprobación necesaria del Consejo de Titulares. Tampoco consignaron los cambios ni los nuevos porcentajes de participación mediante una escritura pública ni los inscribieron en cada una de las fincas filiales afectadas. Finalmente, los cambios no fueron aprobados ni certificados por la Administración de Reglamentos y Permisos.

Su actuación viola también las más elementales normas de convivencia en un edificio sujeto al régimen de propiedad horizontal. En estas circunstancias, procede que actuemos rigurosamente para evitar que otros titulares violen impunemente estas disposiciones. Dada la ilegalidad de la alteración, no es necesario entrar a decidir si la fe pública registral se extiende a las constancias físicas de un apartamento sujeto al régimen de propiedad horizontal.

En vista de que los cambios realizados por la familia Bryan eran ilegales, procede que se le impongan los gastos de restauración de los apartamentos a su diseño original. También procede que el Tribunal a quo considere la acción instada por la señora Lichtig en su demanda contra coparte. Esta es la solución más justa a la luz de la actuación ilegal de los Bryan.