Opinión concurrente y disidente emitida por la
Juez Aso-ciada Señora Rodríguez Rodríguez.
En esta ocasión nos enfrentamos a dos controversias que afectan directamente el régimen de propiedad horizontal en Puerto Rico. La primera nos invita a examinar la naturaleza catastral del régimen vis-á-vis a la figura de la prescripción adquisitiva o usucapión. La segunda nos lleva a evaluar la función que ejerce el consejo de titulares en los condominios. En síntesis, nos enfrentamos a una valoriza- *863 ción de figuras jurídicas encontradas, ante las que debe-mos decidir cuáles merecen mayor consideración.
Por entender que la opinión mayoritaria concluye acerta-damente en cuanto a la primera controversia, concurrimos. Sin embargo, discrepamos en cuanto a la limitación que se le atribuye al consejo de.titulares a los efectos de usucapir una unidad en el condominio.
HH
Los hechos de este caso no están en controversia. Por estar de acuerdo con la narración de los hechos presentada en la opinión mayoritaria, suscribimos el primer acápite de esa opinión. A pesar de esto, deseamos hacer hincapié en que lo que el consejo de titulares del Condominio Palma Real intenta adquirir por usucapión no es la totalidad de una unidad privada en el condominio, sino un segmento de ésta que no aparece segregado en la escritura matriz. En esa escritura aún consta que el apartamiento en cuestión posee una cabida física que incluye el clóset que se pre-tende usucapir. Nos corresponde entonces examinar pri-mero si es posible en el régimen de propiedad horizontal la usucapión de un segmento de un apartamiento.
HH I — I
A.
Antes de entrar en los méritos del caso, es necesario señalar que esta controversia gira en torno al acto de usu-capir una parte de un apartamiento privado que se segregó de facto sin enmendar la instancia registral en correlación a la realidad extrarregistral del condominio. En los hechos que dan pie a este caso no está en controversia la prescrip-ción adquisitiva sobre los elementos comunes del condomi-nio, por lo que vemos innecesaria la discusión a esos efec-tos que se detalla en la opinión mayoritaria.
*864 La función revisora de los tribunales se limita a resolver las controversias genuinas entre partes opuestas con un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. P.N.P. v. Calderón González, 170 D.P.R. 268 (2007); E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). En nuestra jurisdicción es conocido que la doctrina de la opinión consultiva intenta evitar que se produzcan decisiones en el vacío, en el abstracto o bajo hipótesis de índole especulativa, ya que no es función de los tribunales actuar como asesores o consejeros. Ortiz v. Panel F.E.I., 155 D.P.R. 219, 251 — 252 (2001). Sin embargo, debe distin-guirse entre la doctrina de opinión consultiva y el concepto obiter dictum. Id., pág. 251. Este último
... presupone ... que el tribunal ponente tiene ante sí un caso real y una controversia justiciable; un obiter dictum sólo implica que, al resolver, el tribunal incurre en pronunciamien-tos innecesarios sobre otros asuntos que no están en contro-versia o que no le han sido propiamente planteados en el caso. A diferencia de una opinión consultiva, el obiter dictum emi-tido por un tribunal simplemente se debe tener por no puesto, ya que no constituye parte necesaria del fallo, sino que mu-chas veces son meras expresiones judiciales excesivas e innecesarias. (Énfasis omitido.) íd., págs. 252-253.
En el caso de autos el Tribunal tiene ante sí una contro-versia justiciable. Ahora bien, la exposición de la opinión mayoritaria en la que se hace un inventario de los bienes en el régimen de propiedad horizontal que son adquiribles vía prescripción y los que no, es innecesaria, se produce en el vacío y excede los límites de la controversia principal a la que este Tribunal viene llamado a resolver. Si bien es cierto que la discusión elaborada por la opinión mayorita-ria es atractiva para el desarrollo intelectual y jurídico de nuestra jurisdicción, igual de cierto es que la función de esta Curia no es asesorar especulativamente, sino resolver controversias genuinas que le hayan sido planteadas.
En fin, discrepo de la opinión mayoritaria en tanto no limita su discusión a la controversia de usucapir una uni- *865 dad privada en el condominio, sino que elabora sobre otras instancias en que es o no permitida la usucapión en el régimen.
B. El Código Civil de Puerto Rico faculta que el dominio y demás derechos reales se adquieran por prescripción. Art. 1830 del Código Civil, 31 L.P.R.A. sec. 5241. Claro está, no todo es adquirible vía la prescripción, sino aquello que sea susceptible de ello. Art. 1836 del Código Civil, 31 L.P.R.A. sec. 5247. Nuestro ordenamiento exige que tanto para la prescripción adquisitiva ordinaria como la extraordinaria converjan cuatro requisitos con relación a la posesión: que sea en concepto de dueño, pública, pacífica e ininterrumpidamente. Art. 1841 del Código Civil, 31 L.P.R.A. sec. 5262. Referente al caso de autos, las partes estipularon que el consejo de titulares lleva varios años en posesión del clóset en cuestión y que el dueño original del apartamento 1-G nunca tuvo acceso a este. Así, el Tribunal de Primera Instancia, confirmado por el Tribunal de Apela-ciones, sentenció que el consejo de titulares cumplió con los requisitos para consumar la usucapión extraordinaria. (1)
A priori, tal conclusión aparenta validez, puesto que se satisfacen las exigencias de la prescripción adquisitiva extraordinaria. No obstante, las figuras jurídicas no deben evaluarse en el vacío ni mucho menos en abstracción del resto del ordenamiento jurídico. Véase, e.g., L. Fiol Matta, En el vacío no hay Derecho: lecciones del juez Raúl Serrano Geyls desde el Tribunal Supremo, 80 Rev. Jur. U.P.R. 899 (2011). Por ello es menester examinar el contexto sobre el que se aplica una figura. En este caso debemos valorar la utilización de la prescripción adquisitiva en otro marco ju-rídico denominado propiedad horizontal.
La Ley de Condominios exige que al someter un inmue-ble al régimen de propiedad horizontal se presente para *866 inscripción una escritura matriz con la descripción de la cabida de cada apartamiento, así como los planos del inmueble. 31 L.P.R.A. sees. 1291, 1292 y 1292b. En ocasión de esas exigencias, este Tribunal estableció que el régimen de propiedad horizontal en Puerto Rico es de naturaleza catastral. García Larrinua v. Lichtig, 118 D.P.R. 120 (1986); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978). Así, en García Larrinua, supra, págs. 131-133, mencionamos:
De las disposiciones antes descritas surge con meridiana claridad que nos encontramos no sólo ante la llamada “inscrip-ción constitutiva” sino que, en relación con la Ley de Propie-dad Horizontal ... el Registro de la Propiedad tiene las carac-terísticas de un sistema catastral.
Lo anteriormente expresado es la razón por la cual en el caso de la Ley de Propiedad Horizontal no es de aplicación la norma general de que el Registro de la Propiedad no es garan-tizador de cabida. Esto es, de ordinario, el Registro no da fe de las características físicas de los inmuebles.
Teniendo el Registro en cuanto a dicha ley las característi-cas de un catastro, la realidad extrarregistral tiene que corres-ponder con la que surge del Registro. Es por ello que al com-prador de un apartamento de un edificio que está sometido al régimen de la Ley de Propiedad Horizontal se le puede oponer e imputar, por ficción de ley, el conocimiento no sólo de las constancias del Registro en lo referente a la titularidad del mismo, sino que se le imputa el conocimiento de las “circuns-tancias particulares”, tales como cabida o superficie total, del apartamento individual de que se trate. (Citas y escolio omitidos).
El Prof. Luis Muñiz Argüelles sostiene que “la ley lo que señala es que el régimen y sus características dependen de la inscripción, no así la titularidad, que puede variar fuera del registro”. L. Muñiz Argüelles, Derechos Reales y Dere-cho Inmobiliario Registral, 77 Rev. Jur. U.P.R. 629, 638 (2008). En ese sentido, “[l]a naturaleza catastral del régi-men se refiere a la existencia del mismo, a la designación de áreas, a las características de los elementos comunes y a otros aspectos ajenos a la titularidad de cada unidad”. íd. *867 Véase también las expresiones del profesor Michel J. Go-dreau a los efectos de que en el sistema catastral que esta-blece la Ley de Condominios “las constancias del Registro de la Propiedad sobre un condominio, si bien no establecen el derecho respecto a la titularidad de cada apartamiento ... sí constituyen la fuente inexpugnable sobre la configu-ración física de los apartamientos”. M.J. Godreau, El con-dominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, págs. 19-20.
La doctrina, pues, ha avalado que la naturaleza catas-tral del régimen de propiedad horizontal de Puerto Rico ahinca una protección a la configuración física y cabida de los apartamientos, mas no a la titularidad de éstos. En consecuencia, debemos concluir que cualquier acto que in-cida sobre la cabida y la configuración física de una unidad en un condominio sin el debido procedimiento que precep-túa la Ley de Condominios, atenta contra la esencia misma del sistema catastral. Esto, adviene en una negación de su existencia. Contrario sería la instancia en que un acto ju-rídico no incida sobre la cabida física de la unidad, sino sobre la totalidad del apartamiento, en cuyo caso el efecto del acto recaería solo sobre la titularidad del bien. En tal circunstancia, no vemos impedimento de ejercer cualquier acto jurídico, incluso la prescripción adquisitiva. Así tam-bién lo faculta el Art. 4 de la Ley de Condominios al pre-ceptuar: los apartamientos “podrán individualmente trans-mitirse y gravarse y ser objeto de dominio o posesión, y de toda clase de actos jurídicos”. 31 L.P.R.A. sec. 1291b.
En el 2003 se enmendó la Ley de Propiedad Horizontal de 1958. Entre los cambios insertados, se destacan desde una enmienda al título de la ley hasta cambios que facili-tan el disfrute de la propiedad individual. Véase M.J. Go-dreau, La nueva Ley de Condominios: guía básica para en-tender el régimen de propiedad horizontal según la Ley 103 del 5 de abril de 2003, 2da ed., San Juan, Ed. Dictum, 2003, pág. 6. En la Exposición de Motivos de la nueva Ley *868 de Condominios, Ley Núm. 103 de 5 de abril de 2003, y cónsono con la jurisprudencia antes citada, la Asamblea Legislativa expuso que “[l]as características fundamenta-les del Régimen de Propiedad Horizontal en Puerto Rico son: ... (5) el carácter catastral de este régimen voluntario; .... [S]on postulados de nuestro régimen de propiedad horizontal que lo definen y que deben preservarse y fortalecerse”. Exposición de Motivos de la Ley de Condomi-nios, 2003 (Parte 1) Leyes de Puerto Rico 356.
Vemos que la intención legislativa con la nueva Ley de Condominios fue afianzar el carácter catastral del régimen de propiedad horizontal. No obstante, la propia ley introduce un elemento laxativo al sistema catastral del régimen.(2) En el Art. 15, 31 L.P.R.A. sec. 1291m, se intro-dujo el inciso (j) para atribuirle al adquirente, cuyo trans-mitente no sea el desarrollador, el conocimiento o la condi-ción manifiesta de los elementos comunes al momento de adquirir. Empero, la condición manifiesta (as is) no se aplicó a la adquisición de unidades individuales en el régi-men de propiedad horizontal, sino sólo a los elementos co-munes del inmueble. Del Informe de la Cámara de Repre-sentantes sobre el P. del S. 1425(3) de 3 de marzo de 2003, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, pág. 7, se desprende que “la aceptación del condominio en las condi-ciones que se encuentra, se refiere a las condiciones mani-fiestas de los elementos comunes”. Por su parte, el Informe Conjunto del Senado sobre el P. del S. 1425, de 12 de no- *869 viembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria, págs. 23-24, menciona:
Esta medida es cónsona con el fin de preservar la conviven-cia que pueda existir en un condominio en el que se hubieren efectuado cambios a la fachada o al destino de ciertas áreas y éstos hubiesen sido aceptados tácitamente por los titulares. El hecho de que los cambios sean manifiestos impide que un ad-quirente de buena fe alegue el desconocimiento de los mismos y por ende su ilegalidad.
De lo anterior debemos colegir que si la Asamblea Le-gislativa evaluó y permitió el elemento de condición mani-fiesta (as is) sobre los cambios de fachada, cabida y uso en cuanto a los elementos comunes, pero no sobre los aparta-mientos individuales, su intención fue que con relación a estos últimos se mantuviese inalterado el sistema catas-tral en tanto es garantizador de la cabida física de esas unidades privadas. Así, en referencia a los apartamientos privados, se salvaguardó la premisa jurisprudencial de que la escritura matriz una vez inscrita en el Registro, es un estatuto privado que gobierna a los condominos y obliga a terceros. Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582 (1973).
Al aplicar la discusión previa a los hechos del caso de autos, es forzoso concluir que si bien la prescripción adqui-sitiva sobre unidades privadas en el régimen de propiedad horizontal es compatible con el Art. 4 de la Ley de Condo-minios, ese acto jurídico no podrá efectuarse en contraven-ción del sistema catastral del régimen que garantiza la configuración física de la unidad. No es un asunto de titu-laridad, sino de la instancia registral que garantiza la ca-bida física del apartamiento y que la Asamblea Legislativa optó por preservar.
La usucapión sólo puede recaer sobre cosas susceptibles de ser adquiridas mediante prescripción. De no serlas, no podrá consumarse la usucapión sobre ellas, independiente-mente de que se cumplan con los demás requisitos dispues-tos en la ley. Nissen Holland v. Genthaller, 172 D.P.R. 503, *870 516 (2007). A pesar de que el consejo de titulares del Con-dominio Palma Real cumplió con los requisitos para usuca-pir una unidad privada en el régimen de propiedad horizontal, ese acto jurídico no se consumió, porque se efectuó sobre un clóset que registralmente aún forma parte de la cabida física de un apartamiento.
En consecuencia, concluimos que es posible usucapir la totalidad de un apartamiento en el régimen de propiedad horizontal, siempre que tal acto no incida sobre la cabida de la unidad y la naturaleza catastral del régimen. Como en la controversia de autos no se intentó usucapir la tota-lidad del apartamiento, sino una parte de éste, de consu-marse tal acto jurídico contravendría las instancias regís-trales y el sistema catastral del régimen de propiedad horizontal.
p — i I — i h — I
La segunda controversia ante nuestra consideración plantea la interrogante de si el consejo de titulares de un condominio está facultado para usucapir una unidad pri-vada en el régimen de propiedad horizontal. Una mayoría de este Tribunal rechaza que el consejo de titulares pueda ejercer tal acto jurídico. Como veremos, yerra la mayoría.
Por fíat judicial esta Curia invistió de personalidad ju-rídica al consejo de titulares de un condominio “en el ám-bito de sus finalidades”. Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 253 (1978). Posteriormente, la Asamblea Legislativa incluyó esa expresión jurispruden-cial en el Art. 38 de la Ley de Condominios de 2003, 31 L.P.R.A. sec. 1293b. Como expone el profesor Michel J. Go-dreau:
El efecto principal que tiene el investir de personalidad ju-rídica a una entidad es el de separar los patrimonios de los condominos y, por ende, la responsabilidad patrimonial individual de éstos, del patrimonio y de la responsabilidad civil pa *871 trimonial del ente colectivo. Cuando hablamos de que una en-tidad tiene personalidad jurídica propia nos referimos a que la entidad que la disfruta es un sujeto de derecho, y como tal, es portador de derechos y de obligaciones propias y distintas a las de otros sujetos de derecho. M.J. Godreau, Personalidad jurídica, legitimación activa y propiedad horizontal: capaci-dad legal de la junta de directores y del presidente para llevar acciones a nombre del condominio, 64 Rev. Jur. U.RR. 481, 482 (1995).
A pesar de esto, la mera determinación de poseer perso-nalidad jurídica no determina las facultades que posee el ente en cuestión. En el caso del consejo de titulares, que es una persona jurídica, hay que examinar los derechos y las obligaciones otorgadas, ya que no cuentan con un “catálogo de derechos y de obligaciones —como ocurre con el ser humano — Id., pág. 484. Para eso hay que ver lo que se le permite hacer al consejo de titulares; en otras palabras, cuáles son los derechos y las obligaciones que tiene. En síntesis, el análisis no puede ser que como el consejo de titulares tiene personalidad jurídica ipso facto tiene dere-chos y obligaciones que le permitan usucapir o realizar otros actos jurídicos. El análisis debe superar tres interro-gantes; a saber: (1) ¿el consejo de titulares tiene persona-lidad jurídica?, (2) ¿qué derechos y obligaciones le han sido facultados? y (3) ¿el acto que pretende efectuar ahora ese consejo de titulares está incluido en los derechos y las obli-gaciones facultados?
La primera interrogante de este examen ya la contesta-mos en la afirmativa. Para la segunda es necesario exami-nar el estatuto que crea la persona jurídica. En la contro-versia de autos el estatuto es la propia Ley de Condominios. El Art. 38 de la Ley de Condominios esta-blece la lista de facultades provistas al consejo de titulares, pero en ella no hay expresión en torno a la capacidad de poseer una unidad privada dentro del régimen. 31 L.P.R.A. sec. 1293b. En cambio, la nueva Ley de Condominios de 2003 introdujo en el Artículo 11-A el elemento procomunal, *872 cuya titularidad se le adjudica al consejo de titulares. Dicta el mencionado artículo:
Serán elementos procomunales aquellas áreas susceptibles de aprovechamiento independiente, sean apartamientos, esta-cionamientos o locales, cuya titularidad le haya sido asignada al Consejo de Titulares. Lo serán también las unidades priva-das que adquiera el Consejo de Titulares mediante cesión, eje-cución en cobro de deudas o por cualquier otro medio legítimo. (Énfasis suplido.) 31 L.P.R.A. sec. 1291Í-1.
Como vemos, a diferencia del Artículo 38, en el Artículo 11-A sí se le faculta al consejo de titulares adquirir una unidad susceptible de aprovechamiento privado. Cabe des-tacar que la opinión mayoritaria reconoce que el Artículo 11-A faculta al consejo de titulares la adquisición de pro-piedades y ser titular de éstas. A pesar de ello, concluye contradictoriamente la mayoría de este Tribunal que el consejo de titulares no puede adquirir una propiedad por el medio legítimo de la usucapión.
A raíz de lo anterior, debemos concluir que si la ley prescribe como una de las finalidades del consejo de titulares el poder tener patrimonio separado al de los titulares, ade-más de poder adquirir una unidad privada mediante la ejecución en cobro de deudas o cualquier medio legítimo, entonces adquirir por la vía de la prescripción adquisitiva es otro procedimiento más en esas finalidades del consejo de titulares. En vista de este análisis, a la segunda inte-rrogante debemos responder que el consejo de titulares tiene como parte de sus derechos y obligaciones la facultad para adquirir mediante cualquier medio legítimo un apar-tamiento privado en el condominio. Tal facultad proviene de las finalidades otorgadas al consejo de titulares y eso no contraviene las demás funciones de ese cuerpo.
La tercera interrogante del examen pautado se puede responder bajo la lógica de un silogismo, sin mayores consideraciones. Esto es, si en los derechos y las obligacio-nes del consejo de titulares se le faculta a adquirir una unidad privada mediante cualquier medio legítimo, y la *873 usucapión es un medio legítimo en nuestro sistema de de-recho, entonces al consejo de titulares le está facultado a adquirir vía prescripción o usucapión. Esta conclusión tiene su fundamento en el propio Artículo 11-A de la Ley de Condominios.
Finalmente, es meritorio señalar que a pesar de que el consejo de titulares posee la facultad para usucapir una unidad susceptible de aprovechamiento privado en el régi-men, tal acto jurídico no puede contravenir el sistema ca-tastral al que está sujeto el régimen de propiedad horizontal de Puerto Rico, según señalamos. Aplicado a los hechos del caso de autos, debido a que el acto de prescripción ad-quisitiva efectuado por el consejo de titulares incide sobre la cabida del apartamiento y las constancias del Registro, esa usucapión no se consumó. A tales efectos, procedería revocar la determinación del foro inferior.

 Sentencia del Tribunal de Primera Instancia, Apéndice, pág. 91. Véase, tam-bién, Sentencia del Tribunal de Apelaciones, Apéndice, pág. 111.

 Compárese la cualidad sui generis del sistema catastral del régimen de pro-piedad horizontal de Puerto Rico con otros sistemas regístrales más rígidos, como el alemán o el australiano. Véanse: L.R. Rivera Rivera, Derecho Registral Inmobiliario puertorriqueño, 2da ed., San Juan, Eds. Jurídica, 2002, págs. 29-33 (en el sistema registral australiano hay “perfecta concordancia del Registro de la finca inmatricu-lada con la realidad física”); L. Rodríguez Otero, Elementos de Derecho Hipotecario, 3ra ed., Madrid, Ed. DIJUSA, 2005, Vol. 1, págs. 35-40; L. Muñiz Argüelles, Dere-chos reales y derecho inmobiliario registral, 77 Rev. Jur. U.P.R. 629, 638 (2008) (“Es por ello que en el Derecho alemán no existe la usucapión de derechos sobre bienes inmuebles, a no ser que se trate de una usucapión a favor del titular inscrito, lo que confirma lo que dice el Registro”).

 El P. del S. 1425 se convirtió posteriormente en la Ley de Condominios, Ley Núm. 103 de 5 de abril de 2003.