# 2000 DTA 137

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**
**PANEL I**

DIOMEDES ORTIZ MALAVE, NILDA ELBA RODRIGUEZ Y LA SOCIEDAD
LEGAL DE GANANCIALES POR ELLOS COMPUESTA
Apelantes-Apelados

v.

LUIS JAIME MEAUX, EDNA RIVERA Y LA SOCIEDAD LEGAL DE GANANCIALES
POR ELLOS COMPUESTA
Apelados-Apelantes

Núms. KLAN-99-01338 / KLAN-99-01340

San Juan, Puerto Rico, a 13 de junio de 2000

Panel integrado por su Presidente, el Juez Brau Ramírez
y los Jueces Colón Birriel y Pesante Martínez

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Se acude ante este Tribunal mediante dos (2) recursos de apelación independientes uno del otro: Núm. KLAN-97-01338 y Núm. KLAN-97-01340. El primero de éstos, Núm. KLAN-97-01338, fue presentado el 10 de diciembre de 1997, por quienes ante el foro recurrido constituyeron los demandantes, Diómedes Ortiz Malavé, Nilda Elba Rodríguez y la Sociedad Legal de Gananciales, compuesta por ambos (en adelante los *"apelantes"*). El segundo de los recursos, Núm. KLAN-97-01340, también se presentó el 10 de diciembre de 1997, pero por quienes ante el foro recurrido constituyeron los demandados, Luis Jaime Meaux, Edna Rivera y la Sociedad Legal de Gananciales, compuesta por ambos (en adelante *"los apelados"*). Acuden insatisfechos de

una *"Sentencia"* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 1 de agosto de 1997, archivándose en los autos copia de una notificación enmendada de la sentencia el 22 de octubre del mismo año. El dictamen declaró *"ha lugar"*, la reclamación de los apelantes, sobre daños y perjuicios, condenando a los apelados al pago de $18,403, más las costas del pleito.

Mediante nuestra *"Resolución"* de 30 de enero de 1998, ordenamos la consolidación de los recursos. Tras otros incidentes y perfeccionados los recursos, estamos en posición de resolver, lo que hacemos con el beneficio de los alegatos de las partes y demás escritos, no sin antes hacer una relación de los hechos pertinentes, según surgen de los documentos mencionados.

## II

Hechos pertinentes a ambos recursos:

El 9 de mayo de 1990, los apelantes presentaron una demanda reclamando a los apelados haber entrado y extraído tierra de un predio de su propiedad, por sí o sus empleados o agentes, *"de forma ilegal, intencional y negligente"*, sin su autorización (Escrito de Apelación de los apelantes, Demanda, a las págs. 17-18 del apéndice), inmueble que se describe de la siguiente manera:

*"PARCELA C. Parcela de terreno de Doce Cuerdas con Dos Mil Novecientos Sesenta Diez Milésimas de Cuerda (12.2960 cdas.) equivalente a cuarenta y Ocho Mil Trescientos Veintiocho Metros Cuadrados con Mil Ciento Noventa y Siete Diez Milésimas de Metro Cuadrado (48,328.1197 m.c.), radicada en el Barrio Arenas del término municipal de Cidra, Puerto Rico; colindando por el Norte, con la Carretera Estatal Número Setecientos Treinta y Cinco; por el Sur, con el Río La Plata y terrenos de la parcela de la cual se segrega, por el Este, con terrenos de los hermanos Lanausse; y por el Oeste, con terrenos de la parcela de la cual se segrega."*

Alegadamente, los apelados entraron en la propiedad de los apelantes y extrajeron tierra de la misma para utilizarla como relleno en su propiedad, la que colinda (por el Oeste) con la parcela antes descrita (la que obtuvieron de la Sucesión Lanausse); que, aun cuando se les había solicitado, los apelados nunca desistieron de la extracción de tierra; y, como consecuencia de ésto, que los apelantes fueron objeto de serias amenazas. Razón por la cual, solicitaron del foro recurrido se les compensaran los daños y/o depreciación en el valor de su terreno, las angustias y sufrimientos mentales sufridos y otra partida para costas y honorarios de abogado. (Escrito de Apelación de los Apelantes, Demanda Enmendada, a las págs. 23-25 del apéndice). Por su parte, los apelados contestaron la demanda. Negaron los hechos esenciales y levantaron ciertas defensas especiales y/o afirmativas.

Tras otros incidentes procesales, la vista en su fondo fue celebrada los días 30 de septiembre y 1-3, 7 y 28 de octubre de 1996. Las partes tuvieron oportunidad de presentar prueba documental y testifical, incluyendo prueba pericial. Posteriormente, el foro recurrido emitió, el 1 de agosto de 1997, la sentencia objeto de nuestra consideración. Inconformes con el dictamen, ambos acudieron a este foro en recursos de apelación independientes.

## III

A-Discusión de los errores señalados por los apelantes, Diómedes Ortiz Malavé, Nilda Elba Rodríguez y la Sociedad de Gananciales por ellos compuesta.

En esencia, se circunscriben a que el foro recurrido: a) no les permitió prueba sobre el costo de reponer el predio afectado con la extracción de tierra a su condición original; b) el no considerar como daños el costo de acarrear el material de relleno y los gastos para regarlo y compactarlo; c) al no concederles una partida por sufrimientos y angustias mentales, y d) no imponer honorarios de abogado por temeridad e intereses desde la presentación de la demanda.

En nuestro ordenamiento procesal civil, las alegaciones en las demandas cumplen el propósito de informar al demandado, en forma general, sobre la existencia de una reclamación en su contra. *Reyes Castillo v. Cantera Ramos, Inc.*, Op. de 24 de enero de 1996, **96 J.T.S. 9**, a la pág. 605. Para precisar los asuntos en controversia, las partes tienen el deber de utilizar los mecanismos de descubrimiento de prueba, según proveen nuestras Reglas de Procedimiento Civil. *Meléndez Vega v. El Vocero de P.R.*, Op. de 24 de noviembre de 1997, **97 J.T. S. 139**, a la pág. 301. A tales efectos, en *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959), se indicó que:

*"[E]n el procedimiento civil moderno, se acepta que las alegaciones sólo tienen una misión: notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. Para precisar con exactitud cuáles son las verdaderas cuestiones en controversia y aclarar cuáles son los hechos que deberán probarse en el juicio, es imprescindible recurrir a los procedimientos para descubrir prueba ...".*

Según se desprende de los autos, el foro recurrido no le permitió a los apelantes presentar prueba sobre el costo en que tendrían que incurrir para reponer el predio afectado (con la extracción de tierra) a su condición original, a consecuencia de lo cual, no reconoció la partida de daños que hubiera correspondido al costo de acarrear el material de relleno hasta el lugar donde se realizó la extracción, los gastos para regarlo y compactarlo. La posición de los apelados, al respecto, giró en torno a la corrección de la actuación del foro sentenciador por cuanto no podía admitir prueba sobre daños especiales, no alegados en la demanda.

Ciertamente, la Regla 7.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que: *"[c]uando se reclamen daños especiales, se detallará el concepto de las distintas partidas."* *Díaz v. Marshak Auto Dist., Inc.*, *95 D.P.R. 690, 702 (1968). Más aún, bajo las disposiciones del Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, aquel que como consecuencia de sus actos u omisiones culposos o negligentes le causa daños a otro, viene obligado a reparar el daño causado. Así, la reparación puede verificarse en una de dos maneras".* *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 454 (1985):

*"(a) la reparación natural o reintegración en forma específica, o (b) la indemnización en dinero; que la mencionada primera alternativa, o sea, la de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño, constituye la solución ideal; que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible, y que la forma en que habrá de efectuarse la reparación la determinarán los tribunales tomando en consideración las características particulares de cada caso."*

Aunque en la práctica resulta difícil conceder la reparación *in natura* de los daños reclamados (por lo que los tribunales optan, en muchas ocasiones, por el *"camino más fácil, (la indemnización en dinero), la realidad es que ambas alternativas resultan ser mutuamente excluyentes."* *Rodríguez Cancel v. A.E.E.*, *supra*, a la pág. 455.

Según establecen los apelantes, la alegación número nueve (9) en su *"Demanda Enmendada, señala que: [c]omo consecuencia de los actos ilegales, intencionales y negligentes de los demandados, la parcela de los demandantes sufrió daños y/o merma en su valor que se estiman razonablemente en exceso de Cien Mil Dólares ($100,000.00)."* Ciertamente, la merma en el valor de que pudo ser objeto la finca de donde se extrajo la tierra, constituye una partida de daños especiales sobre la cual el tribunal entendió no procedía compensación alguna. (Escrito de Apelación de los apelantes, Sentencia, a la pág. 10 del apéndice). En adición, los apelantes no alegaron, ante nosotros, se haya cometido dicho error, por lo que no habremos de abundar al respecto. Cf. *López v. Manzano Pozas*, Op. de 25 de junio de 1996, **96 J.T.S. 95**, a la pág. 1309.

De otro modo, los daños a la propiedad que los apelantes alegan haber sufrido, constituyen otra partida de daños especiales que debió ser detallada en la demanda. (Véase, Irizarry Yunqué, Carlos J., *Responsabilidad Civil Extracontractual: Un estudio basado en las decisiones del Tribunal Supremo de Puerto Rico*, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, San Juan, 1995, a la pág. 346, sobre ejemplos que

constituyen daños especiales, gastos médicos, de hospitalización y de medicinas, equipo para tratamiento; la pérdida de ingresos y el lucro cesante; los probables gastos futuros en que tenga que incurrir una persona para atenderse determinada condición; los daños a propiedad, pérdida de su uso o depreciación en su valor.) El foro recurrido entendió alegado y probado unos daños ascendentes a $18,403.00, en concepto del *"valor del material extraído"* por los apelados. (Escrito de Apelación de los apelantes, Sentencia, *supra*) Tal adjudicación constituye, en sí misma, el reconocimiento expreso (de una porción) del daño a la propiedad que reclaman haber sufrido los apelantes.

Entonces, la controversia que nos ocupa ya no gira en torno a si el foro recurrido reconoció o no un reclamo sobre un daño especial, el daño a la propiedad de los apelantes. Evidentemente, los actos del foro recurrido nos permiten concluir que, sin lugar a dudas, como foro judicial, evaluó y determinó la procedencia de dicho daño. A tal extremo, sólo nos corresponde determinar si debió permitírseles a los apelantes, presentar prueba sobre el costo que conllevaría reponer el predio afectado con la extracción a su condición de origen.

Como expresáramos anteriormente, el *"daño de la parcela"* de los apelantes, claramente constituye un daño especial, que fue atendido por el foro recurrido en la medida en que adjudicó el valor o daño causado por la extracción de material a la propiedad. Con su actuación: a) reconoció la capacidad de los apelantes para reclamar los daños sufridos en su propiedad, y b) entendió oportuno indemnizar económicamente tales daños, en lugar de exigir, como primera alternativa, la reparación *in natura* de la propiedad afectada.

Ahora bien, habiendo reconocido el reclamo de los daños sobre la propiedad de los apelantes, el foro recurrido falló en considerar la totalidad de la prueba, dirigida a un mismo fin: llevar a su estado natural el predio objeto de la extracción. No sería razonable si dejáramos de reconocer el costo de un material que, de otra forma, no podría llegar por cuenta propia al lugar de donde fue originalmente extraído.

Evidentemente, no se trata de unos cuantos *"saquitos"* o *"cubitos"* de tierra que pueden ser transportados y esparcidos sin mayor dificultad. Según se desprende de la propia *"Sentencia"* del tribunal, *supra, "se removieron unos 12,268.37 metros cúbicos del área en controversia".* (Escrito de Apelación de los apelantes, Sentencia, a la pág. 6 del apéndice) Ciertamente, el reclamo de los apelantes (para que se le compensen los gastos en que necesariamente habrán de incurrir para transportar el relleno hasta el lugar de donde se realizó la extracción, regarlo y compactarlo), surge como secuela directa del hecho de la extracción misma. No se trata de daños especiales distintos e independientes, sino de un mismo daño especial que necesariamente surge de la misma reclamación, reconocida por el propio tribunal.

A tales efectos, el Tribunal Supremo ha indicado que: *"allí donde ocurre la total reparación in natura, no cabe la indemnización en dinero, y donde se indemniza en dinero la totalidad del daño sufrido, no procede la reintegración en forma específica." Rodríguez Cancel v. A.E.E., supra.*

Visto de otro modo, si el foro recurrido hubiera optado por exigirle a los apelados la reparación *in natura* del daño reconocido, entonces, necesariamente, sólo existiría una posibilidad: reconocer que el llevar la propiedad a su estado original requiere no tan sólo del material para relleno, sino de un ente que acarree, localice y compacte el mismo. El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Toda vez que el foro recurrido decidió indemnizar económicamente los daños sufridos, los apelantes tenían derecho a que se le reconociera el valor del material extraído (correspondiente al material de relleno), además de los costos en que necesariamente tendrían que incurrir para llevar su propiedad a su estado original. Y es que ello tiene que ser así; de lo contrario, estaríamos alentando al *"enriquecimiento injusto"* de los que actúan sin consideración a los agraviados. Véase, Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* San Juan, **Publicaciones J.T.S.,** 1980, Vol. I, págs. 8-2.

Aun cuando de la minuta del 20 de enero de 1994, en la vista ante el Hon. Rafael E. Castro Pérez (Escrito

de Apelación de los apelados, Minuta, a la pág. 34 del apéndice), surge que el foro recurrido no tuvo ante sí, ni las partes podrían producir un plano topográfico para reflejar cómo era la finca con antelación a los hechos en que se presentó la demanda, determinamos que ello no es razón suficiente para descartar la necesidad de compactar un relleno que habría de ser depositado en el lugar donde el perito del tribunal determinó se había extraído una cantidad específica de material. Coincidimos con los apelantes cuando alegan que el actuar de otro modo llevaría un mensaje nefasto a nuestro sistema de convivencia social, dentro de un marco de respeto a las leyes, a las personas y a la propiedad ajena, pues *"cuando cualquier ciudadano de Puerto Rico necesi[tara] relleno, con extraerlo de la propiedad vecina se economiza lo que le costaría transportarlo desde la cantera hasta su propiedad",* ello sin incluir los gastos para regar y compactarlo. En consideración a lo cual, entendemos que erró el foro recurrido, toda vez que se limitó a considerar como daños, el costo del material extraído.

Los apelantes sostienen en su señalamiento de error identificado previamente con la letra c, *supra,* que *"[e]l tribunal ni adjudicó ni denegó la reclamación de daños por sufrimientos y angustias y no hizo expresión alguna en la Sentencia sobre este particular."* (Escrito de Apelación de los apelantes, *supra.*) No les asiste la razón, por cuanto el foro recurrido indicó que dicha parte *"[n]o nos puso en posición de adjudicarle ningún otro daño a su finca, ni probó daños mentales."* (Escrito de Apelación de los apelantes, Sentencia, a la pág. 10 del apéndice) Evidentemente, el foro recurrido adjudicó dicha reclamación, resultado con el cual los apelantes no quedaron conformes.

Por otro lado, reiteradamente hemos resuelto que las disposiciones reglamentarias de los foros apelativos deben observarse rigurosamente. *"Los abogados vienen obligados a cumplir fielmente el trámite prescrito en las leyes y reglamentos aplicables para el perfeccionamiento de los recursos",* y no puede *"quedar al arbitrio de los abogados decidir qué disposiciones reglamentarias deben acatarse y cuándo". Arriaga v. F.S.E.,* Op. de 18 de marzo de 1998, **98 J.T.S. 28**, a las págs. 687-881.

Como foro apelativo, fuimos sumamente lenientes al no desestimar el recurso de apelación presentado por los apelantes, en consideración al repetido incumplimiento de éstos con las órdenes del foro recurrido, así como con las de este Tribunal, todas ellas encaminadas al perfeccionamiento de su recurso. Obsérvese que durante el trámite del perfeccionamiento del recurso que nos ocupa, luego de múltiples resoluciones al efecto, el 11 de marzo de 1999, emitimos *"Resolución"* ordenándole a las partes presentar una transcripción de la prueba, para cumplir con las disposiciones de nuestro reglamento, concediéndoles, para ello, un término final e improrrogable de treinta (30) días. Posteriormente, según expusiéramos en nuestra *"Resolución"* de 9 de julio de 1999, eximimos a los apelantes de presentar una exposición narrativa de la prueba (o transcripción) conforme a la Regla 19 de nuestro Reglamento, pues manifestaron (en su escrito en *"Oposición a Moción de Desestimación"* de 29 de junio de 1999, a la pág. 2) que *"entre los errores señalados [ ... ], no se incluyó señalamiento alguno que tenga que ver con la apreciación de la prueba";* razón por la cual no acogimos la *"Moción de Desestimación"* presentada por los apelados, de 1 de junio de 1999 (donde se exponía detalladamente la falta de iniciativa e inacción de los apelantes para gestionar, en forma adecuada, el perfeccionamiento de su recurso).

Habiendo expuesto los apelantes que no procedía desestimar su recurso, pues no necesitaríamos de una exposición narrativa o transcripción de la prueba, *"por no haber incluido señalamiento alguno que tuviera que ver con la apreciación de la prueba",* dimos por renunciado aquella parte del señalamiento de error identificado con la letra c, *supra,* que incidía sobre la apreciación que de la prueba hiciera el foro recurrido (testigos que declararon durante la vista en su fondo). Hacer otra cosa, implicaría permitirle a dicha parte decidir qué disposiciones reglamentarias deben acatarse y cuándo. No obstante, y sólo para fines de discusión, aun si consideráramos la exposición narrativa de la prueba presentada por los apelados, de ésta tampoco surge que los apelantes hayan probado su reclamo sobre los sufrimientos y angustias mentales.

Tampoco les asiste la razón a los apelantes en cuanto a su cuarto y último señalamiento de error. La Regla

44. 1 (d) de las de Procedimiento Civil, *supra*, dispone que cuando una parte haya procedido con temeridad, el tribunal deberá imponerle, mediante sentencia, el pago de una suma por concepto de honorarios de abogado. El propósito principal de la citada Regla 44. 1 (d) *supra, "es el de penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a la otra parte a asumir y sufrir las molestias, gastos, trabajos e inconveniencias de un litigio innecesario".* Corpack Art Printing v. Ramallo Brothers, 125 D.P.R. 724, 737 (1990). En tales casos, la determinación de si un litigante ha procedido con temeridad o no, descansa en la sana discreción del tribunal sentenciador y la cuantía concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Ramírez v. Club Cala,* 123 D.P.R. 339, 350 (1989). Le corresponde a la parte que alega ello ocurrió, demostrar que el error fue debido al abuso de la discreción del foro apelado. *CNA Casualty de P.R. v. Torres Díaz,* Op. de 11 de junio de 1996, **96 J.T.S. 85**, a la pág. 1248.

Primeramente, los apelantes fallaron en demostrar que el foro recurrido abusó de su discreción al no encontrar a los apelados incursos en temeridad. En segundo lugar, cuando el foro recurrido reconoció la existencia de una controversia legítima sobre colindancia, en la que intervino y adjudicó derechos, legitimó la capacidad de los apelados para alegar un derecho que entendían les correspondía.

Obsérvese que no existe temeridad cuando el asunto a resolver es complejo y novel; cuando un litigante actúa a base de una apreciación errónea de un aspecto de derecho y no hay precedentes que arrojen luz; o existe una discrepancia honesta relativa al derecho aplicable a los hechos del caso. *García Larrinúa v. Lichting,* 118 D.P.R. 120 (1986). En autos, las alegaciones de los apelados demuestran una discrepancia honesta, relativa al derecho aplicado (problema sobre colindancia), y no encontramos que hayan incurrido en tácticas dilatorias o que haya ocasionado que la parte apelante incurriera en gestiones evitables. Según surge de los autos, los apelados no incurrieron en conducta que requiera se impongan honorarios por temeridad. *Torres Ortiz v. E.L.A.,* Op. de 30 de junio de 1994, **94 J.T.S. 100**, a la pág. 12152. En consecuencia, el Tribunal de Primera Instancia no incurrió en el error alegado.

B-Discusión de los errores de los apelados

Luis Jaime Meaux, Edna Rivera y la Sociedad de Gananciales compuesta por ellos (Núm. KLAN-97-01340):

Procedemos ahora, a atender los señalamientos de error de los apelados: a) que la colindancia que separa los predios entre las partes no discurre por el lugar establecido por el foro recurrido; b) que dicho foro debió aplicar las normas legales relativas a la reivindicación de inmuebles; c) al no considerarlos como poseedores de buena fe; d) al concluir que fueron negligentes, y e) al conceder una cuantía en daños basada en prueba especulativa.

El primero de ellos sostiene que la colindancia que separa los predios entre las partes litigantes no discurre por el lugar que determinó el foro recurrido. A tales extremos, indican que *"no está en discusión que a base de los documentos que decidió usar el Ing. Insern [testigo pericial nombrado por el tribunal para emitir informe pericial], la única conclusión a que podía llegarse es que la colindancia discurría por donde alegaba la parte demandante."* Por ende, que no se trataba de un problema de credibilidad, sino de dilucidar *"si la colindancia debía fijarse a base de [...] la abundante prueba, tanto testifical, pero especialmente documental que demostraba que estos documentos [los utilizados por el Ing. Insern] eran crasamente incorrectos".* (Escrito de Apelación de los apelados, a la pág. 12). Más aún, indican que, de considerarse la evidencia documental presentada por ellos (ante el foro sentenciador), necesariamente habría que reconocer que los apelantes no cumplieron con las normas relativas a la reivindicación de bienes inmuebles, y que fueron ellos (los apelados) los que lograron establecer su derecho al predio en cuestión. (Escrito de Apelación de los apelados, a la pág. 20)

Cuando una parte opta por impugnar un dictamen sobre el cual el foro apelado escuchó y aquilató prueba testifical, la norma imperante en nuestra jurisdicción es que los tribunales apelativos no intervendrán con la

apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia, en ausencia de pasión, parcialidad o error manifiesto. *Pérez Cruz v. Hosp. La Concepción,* 115 D.P.R. 721, 728 (1984). En ausencia de esa demostración, la determinación a que llegue el foro recurrido será merecedora de gran deferencia por parte del tribunal apelativo, por cuanto el juzgador de instancia es quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, pues él fue quien oyó y vio declarar a los testigos. *Pueblo v. Bonilla Romero,* 120 D.P.R. 92, 111 (1987). A tales extremos, las sentencias de los tribunales están cobijadas por la presunción de ser justas y correctas. *Pueblo v. Pérez Bernard,* 99 D.P.R. 834, 839 (1971).

Para impugnar el dictamen producido por el foro recurrido y refutar los documentos utilizados por el Ing. Isern (para concluir como lo hizo), los apelados sostienen que debió considerarse otra prueba documental (de que no hiciera mención el foro sentenciador en su dictamen). Dicha prueba *"admitida"* y *"no considerada"* por el tribunal, de que hacen mención los apelados, incluye: a) una foto aérea del 1977, de la División de Fotogrametría de la Autoridad de Carreteras de Puerto Rico; b) un mapa para tasadores del E.L.A. de Puerto Rico de 1979, y c) fotos aéreas del 1988, 1990 y 1991, de la División de Fotogrametría de la Autoridad de Carreteras de Puerto Rico. Aducen que dichos documentos proponían claramente la *"diferencia en vegetación entre la finca del demandante y la finca del demandado. [Lo que] permite concluir que ya para esa fecha [1977], el predio en controversia formaba parte de la finca del demandado."* (Escrito de Apelación de los apelados, a la pág. 14)

Ninguno de los documentos antes señalados por los apelados constituyen fuente documental, a nivel apelativo, de la que podamos tomar conocimiento, pues los apelados no incluyeron dicha prueba como parte de su recurso; prueba esencial para sostener su posición al respecto. Remítase a las Reglas 16E(1), (d) y (e) del Reglamento del Tribunal de Circuito de Apelaciones. Los apelados no acreditaron de manera adecuada, los fundamentos en que se basan para sostener su posición. En vista de lo cual, careciendo de los elementos necesarios para llegar a la conclusión que ellos pretenden, procede descartar su posición. La evidencia documental y testifical, admitida por el foro recurrido, constituye prueba suficiente para sostener su dictamen, al que le cobija una presunción de ser justo y correcto. Como sabemos, un tribunal apelativo no podrá alterar las determinaciones de un tribunal de menor jerarquía a no ser que éstas sean claramente erróneas. Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985). El error alegado no fue cometido.

Los apelados indican, además, que *"los planos que tenía Jaime Meaux y la verja existente señalaban que el predio en controversia formaba parte de su finca."* (Escrito de Apelación de los apelados, a la pág. 21) En vista de lo cual, al actuar en lo que entendían les pertenecía, lo hacían de buena fe, por lo que, conforme establece nuestro Código Civil, podían hacer suyos los frutos *"industriales"* percibidos, sin venir obligados a abonar nada de ello. 32 L.P.R.A. secs. 1142, 1145-46, 1164, 1166 y 1172.

Los tribunales apelativos están facultados para negarse a considerar, en apelación o revisión, cualquier asunto que no ha sido debatido o considerado en etapas anteriores a los procedimientos ante su consideración. *Murcelo v. H. I. Hettinger & Co.,* 92 D.P.R. 411, 426 (1965), y *Zalduondo v. Iturregui,* 83 D.P.R. 1, 12 (1961). Así, pues, de la Sentencia apelada o de la exposición narrativa de la prueba, presentada y aprobada por el foro recurrido, no surge que se hubiera considerado aspecto alguno relativo a la buena o mala fe de los apelados. Mucho menos sobre la capacidad de hacer suyos los *"frutos industriales"* percibidos. En consideración a lo cual, no habremos de intervenir, en esta etapa apelativa, con dicho asunto.

En cuanto a los dos últimos señalamientos de error de los apelados, serán discutidos simultáneamente. En ellos, exponen que no se cumplieron los requisitos necesarios por el Art. 1802, *supra,* para imponerles responsabilidad.

Como sabemos, para que exista responsabilidad bajo las disposiciones del Art. 1802, *supra,* es necesario se

encuentren presentes los elementos de dicha causa de acción: que ocurra un daño, una acción u omisión negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. *Montalvo Feliciano v. Cruz Concepción*, Op. de 4 de febrero de 1998, **98 J.T.S. 6**, a la pág. 499. Los apelados alegan, en síntesis, que: a) la cuantía del daño reconocido por el foro recurrido fue uno basado en prueba especulativa, dado que *"[e]l cálculo del relleno removido por el Sr. Meaux fue uno especulativo"*. (Alegato Suplementario de los Apelantes Luis Jaime Meaux, Edna Rivera, etc., a la pág. 15), y b) que su conducta no fue constitutiva de la negligencia requerida por el citado artículo, toda vez que, de la prueba no haber sostenido que la finca les pertenecía, cuando menos *"estableció que de buena fe [los apelados] entendía[n] que era su finca"*. (Alegato Suplementario de los Apelantes Luis Jaime Meaux, Edna Rivera, etc., a la pág. 14)

En lo que respecta a la cuantía de los daños concedidos por el foro recurrido, sólo habremos de mencionar que el perito del foro recurrido, explicó y detalló, durante la vista en su fondo, el método utilizado para llegar al cómputo en cuestión, relativo a la cantidad de relleno que fue extraído por los apelados. (Exposición Narrativa Enmendada de la Prueba, a las págs. 31-32). Cómputo técnico que no fue objetado por los apelados durante la vista en su fondo y que, finalmente, fue aceptado por su propio perito (el Ing. Figueroa), al indicar que *"conforme a las tablas y datos"* era uno *"razonable"*. (Exposición Narrativa Enmendada de la Prueba, a la pág. 32) Así mismo, estamos convencidos que la determinación que sobre negligencia hiciera el foro recurrido, quedó muy bien sostenida por los hechos que dicho tribunal tuvo ante su consideración. A tales extremos, indicó (Escrito de Apelación de los Apelantes, Sentencia, a la pág. 9 del apéndice):

*"Una vez Ortiz acudió a la finca para indicarle que los trabajos se estaban realizando en su predio y no en el de Meaux, éste debió paralizar la obra y verificar si lo alegado por Ortiz era correcto. No lo hizo y los trabajos continuaron por varias semanas. Es importante recordar que desde que adquirió su predio, Meaux conocía que la cabida no era la que reflejaba la escritura de compraventa y que había diferencia en la colindancia con la finca de Ortiz. Ante estas circunstancias, como hombre prudente y razonable, Meaux debió, en ese momento, "investigar lo que ignoraba, en lugar de asumir riesgos innecesarios que pudieran haber sido evitados mediante una investigación oportuna". Al continuar las obras, penetrando en el predio del codemandante y extrayendo tierra, incurrió en responsabilidad."* [Cita omitida]

Consideramos que dichas expresiones son suficientes para configurar la negligencia que sirvió de base para el ejercicio válido de la discreción judicial al respecto. Razones por las cuales determinamos que estos errores tampoco fueron cometidos.

En mérito a lo expuesto, modificamos aquella parte del dictamen recurrido que no consideró como daños el costo de acarrear el material de relleno y los gastos para regarlo y compactarlo, quedando en efecto y vigor el resto del dictamen. Así modificado, devolvemos el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, a los fines de determinar, a la luz de la prueba ofrecida por la parte apelante, los referidos daños, si algunos, los que serán añadidos a la compensación ya adjudicada a los apelantes.

Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General