Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton,
a la que se une la Jueza Asociada Señora Pabón Charneco.
Diferimos de la opinión que emite una mayoría de este Tribunal en este caso, principalmente, porque al aplicarla a los hechos específicos de la controversia, desprotege a los titulares de un condominio cuyos servicios básicos pueden quedar secuestrados por un particular. Esto, pues no pro-vee remedios inmediatos para finalizar este conflicto que lleva ocho años litigándose y no permite continuar una sana convivencia comunitaria. Por entender que no hay nada en la Ley 103-2003, conocida como la Ley de Condo-minios, 31 L.P.R.A. sec. 1291 et seq. (Ley de Condominios), que impida que un Consejo de Titulares adquiera un bien privativo mediante la prescripción adquisitiva extraordi-naria, confirmaríamos la decisión del Tribunal de Apelacio-nes que concluyó de igual manera y pondríamos punto fi *874 nal a este caso. Creemos que, en virtud del Art. 11-A de la Ley de Condominios, 31 L.P.R.A. sec. 1291Í-1, el consejo de titulares está facultado para adquirir, mediante cualquier medio legítimo, una unidad privativa sometida al régimen de horizontalidad como un elemento procomunal.
Al este Tribunal aclarar que la prescripción adquisitiva de un bien privativo en el régimen de propiedad horizontal es viable como medio de adquisición de propiedad privada, no hallamos preceptos en la Ley de Condominios que le impidan al Consejo de Titulares utilizar este medio de ad-quisición de dominio, sino todo lo contrario.
r-H
En junio de 2003, el Sr. Sol Bravman y la Sra. Carmen González Hernández (esposos Bravman-González) presen-taron ante el Tribunal de Primera Instancia una demanda contra Metropolitan Builders, Inc.(1) y la Junta de Directo-res del Condominio Palma Real. En esencia, alegaron que desde el 28 de junio de 2001 eran titulares del aparta-mento 1-G del Condominio Palma Real (Condominio), in-mueble sometido al régimen de propiedad horizontal desde octubre de 1968. Poco tiempo después de mudarse a ese apartamento se dieron cuenta de que el armario del dormi-torio principal había sido segregado, al haberse construido una pared que lo separó del dormitorio. De igual forma, adujeron que el consejo de titulares utiliza ese armario para ubicar los contadores de electricidad y las tuberías de agua y desagüe del Condominio, aunque el espacio está inscrito como una finca privativa tanto en la escritura ma-triz como en los planos del inmueble.
Asimismo, los esposos Bravman-González argüyeron que utilizar ese espacio privativo para fines comunales es una violación al Art. 2 de la Ley de Condominios, 31 *875 L.P.R.A. sec. 1291, pues este establece claramente que el uso y destino de un área comprendida en un inmueble so-metido al régimen de horizontalidad solo podrá ser variado mediante el consentimiento unánime de los condominos. Por tal razón, le solicitaron a la junta de directores del Condominio la devolución del uso y posesión del armario en cuestión, mas esta no accedió a sus reclamos. Tras va-rios incidentes procesales, los esposos Bravman-González enmendaron su demanda a los efectos de sustituir la junta de directores del Condominio por el consejo de titulares.
Por su parte, el consejo de titulares, en su contestación a la demanda enmendada, negó la mayoría de las alegacio-nes y esbozó como defensa afirmativa, entre otras, que el área del armario en controversia la había adquirido por prescripción adquisitiva. Esto, pues argüyó que poseyó esa área de forma pacífica, ininterrumpida y en concepto de dueño por más de treinta años y, por lo tanto, adquirió el dominio del bien mediante la usucapión extraordinaria.
Luego de varios trámites procesales y celebrado el juicio correspondiente, el Tribunal de Primera Instancia emitió una sentencia en la que desestimó la demanda presentada por los esposos Bravman-González. Entre los hechos que fueron estipulados por las partes y tomados como ciertos por el foro primario, se encuentra que el dueño original del apartamento 1-G del Condominio, FM Investment, Corp., nunca tuvo acceso al armario en controversia pero que, en abril de 1993, presentó una demanda ante el Tribunal de Primera Instancia en la cual alegó pérdidas por la utiliza-ción de ese espacio que, registralmente, era parte de su apartamento. No obstante lo anterior, esa demanda fue desestimada por incumplimiento e inactividad por parte de FM Investment, Corp. mediante una sentencia hoy final y firme.
Asimismo, como el foro primario razonó que la presen-tación de la referida demanda en 1993 no tuvo el efecto de interrumpir el término prescriptivo para adquirir la pro- *876 piedad en cuestión mediante la usucapión, concluyó que el Consejo de Titulares había adquirido el armario por pres-cripción adquisitiva extraordinaria. Esto, pues había es-tado poseyendo esa área por más de treinta años en con-cepto de dueño, pública, pacífica e ininterrumpidamente.
Inconformes con esta determinación, los esposos Brav-man-González acudieron ante el Tribunal de Apelaciones en apelación. En síntesis, alegaron que el área en contro-versia no es susceptible de ser adquirida por prescripción adquisitiva a la luz del Art. 2 de la Ley de Condominios, supra. De esta forma adujeron que el uso y destino de las fincas comprendidas en un inmueble sometido al régimen de propiedad horizontal solo pueden variarse con el con-sentimiento unánime de los condominos.
Así expuesta la controversia, el Tribunal de Apelaciones confirmó la sentencia emitida por el foro primario. En esencia, concluyó que la Ley de Condominios guarda silen-cio sobre si el uso y destino de un área en un inmueble sometido al régimen de propiedad horizontal puede ser va-riado mediante la prescripción adquisitiva, por lo que al no existir ninguna expresión a estos efectos, y al no haber conflicto entre la ley especial y las disposiciones pertinen-tes del Código Civil, se pueden aplicar estas últimas al caso de autos. Al así hacerlo, señaló que el Consejo de Ti-tulares fue un poseedor de mala fe, pero que desde 1969 estuvo poseyendo el referido armario en concepto de dueño, de forma pública, pacífica e ininterrumpidamente, por lo que adquirió el dominio del bien por la usucapión extraordinaria.
Aun insatisfechos, los esposos Bravman-González acu-den ante nos mediante recurso de certiorari y alegan, como resuelve la opinión mayoritaria, que el Consejo de Titula-res está legalmente impedido de variar el uso y destino de un área, cambiándola de privativa a comunal, sin el con-sentimiento de la totalidad de los condominos al amparo del Art. 2 de la Ley de Condominios, supra.
*877 i-I ) — I
A. La prescripción adquisitiva o usucapión
El Art. 1830 del Código Civil de Puerto Rico preceptúa que “[p]or prescripción se adquieren, de la manera y con las condiciones determinadas en la ley, el dominio y demás derechos reales. También se extinguen del propio modo por la prescripción los derechos y las acciones, de cualquier clase que sean”. 31 L.P.R.A. sec. 5241. Como se desprende de lo anterior, existen dos clases de prescripción, a saber, la prescripción adquisitiva y la extintiva. Id. Véanse, además: Silva Wiscovich v. Weber Dental Mfg. Co., 119 D.P.R. 550 (1987); Dávila v. Córdova, 77 D.P.R. 136 (1954).
Por la prescripción adquisitiva, o comúnmente denomi-nada usucapión o prescripción del dominio, se adquieren el dominio y todos los derechos reales. De igual forma, la doc-trina ha dividido la prescripción adquisitiva en dos modali-dades, a saber, la ordinaria y la extraordinaria. E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, New Hampshire, Equity Pub. Co., 1991, T. VII, Vol. 1, págs. 375-376; J. Castán Tobeñas, Derecho civil español, común y foral, 13ra ed., Madrid, Ed. Reus, T. 1, Vol. 2, 1982, págs. 347-348. Asimismo, como expresa Puig Bru-tau sobre estas dos modalidades de prescripción, “[e]n la primera [la ordinaria] el plazo es más breve, pero a cambio de ello han de concurrir los requisitos de título y buena fe. En la segunda [la extraordinaria] no son necesarios estos requisitos pero el plazo es más prolongado”. J. Puig Brutau, Fundamentos del Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1971, T. 3, Vol. 1, pág. 360.
Ahora bien, la usucapión solo es viable como forma de adquirir la propiedad respecto a todas las cosas que están en el comercio de los seres humanos, como lo señala el Art. 1836 del Código Civil, 31 L.P.R.A. sec. 5247. Véase, ade-más, L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 6ta ed., Madrid, Ed. Tecnos, 1997, Vol. III, pág. 146. Asi- *878 mismo, la prescripción adquisitiva conlleva una serie de requisitos, dependiendo de si es ordinaria o extraordinaria. Para que ocurra la prescripción adquisitiva ordinaria hay dos elementos adicionales que deben estar presentes siem-pre que se tenga la posesión dispuesta en la ley, de una cosa o derecho susceptible de apropiación, a saber, justo título y buena fe. Ramos v. Ríos, 78 D.P.R. 619 (1955); Diez Picazo y Gullón, op. cit., págs. 149-151; Puig Brutau, op. cit., págs. 363-366. Así, el Art. 1850 del Código Civil pre-ceptúa que “[l]a buena fe del poseedor consiste en la creen-cia de que la persona de quien recibió la cosa era dueña de ella, y podría transmitir su dominio”. 31 L.P.R.A. see. 5271. De igual forma, el Art. 363 del Código Civil establece, inter alia, que “[s]e reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio que lo invalide”. 31 L.P.R.A. sec. 1424. Véanse, además: M.J. Go-dreau Robles, Lealtad y Buena Fe Contractual, 58 Rev. Jur. U.P.R. 367 (1989); D. Espín Cánovas, Derecho Civil Espa-ñol, Madrid, Ed. Rev. Der. Privado, T. II, 1968, pág. 159.
Por otro lado, el Art. 1852 del Código Civil dispone: “[e]ntiéndese por justo título el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate.” 31 L.P.R.A. sec. 5273. Como complemento a ello, tal como lo establece el Art. 1854 del mismo cuerpo normativo, el justo título debe probarse, pues este, que debe ser ver-dadero y válido, no se presume, contrario a la buena fe. 31 L.P.R.A. sees. 5274-5275. Véanse, además: Castán Tobe-ñas, op. cit., págs. 353-355; D. Espín Cánovas, Función del justo título en la adquisición de derechos por usucapión, 10 (T. LII) Rev. Der. Priv. 833 et seq. (1968); M. Albaladejo, El título anulable en la usucapión, 34 Rev. Jur. U.P.R. 47 (1965).
Claro está, la posesión de una cosa o un derecho real susceptible de apropiación sin justo título ni buena fe, por imperativo de ley, también puede ser un modo de adquirir la *879 propiedad por el transcurso del tiempo, lo que se conoce como la usucapión o prescripción adquisitiva extraordinaria. Para que suceda, al igual que para que apli-que la prescripción adquisitiva ordinaria, la cosa o el dere-cho debe poseerse por un transcurso de tiempo con determi-nadas características. Ello, pues para que ocurra la usucapión tiene que haber existido la posesión de la cosa o el derecho por un periodo de tiempo fijado en ley, pero recal-cando que no toda posesión da pie a la prescripción adquisitiva. Véanse: Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154 (2005); Dávila v. Córdova, supra; Puig Bru-tau, op. cit., pág. 368.
Primeramente, es pertinente notar que el Art. 1842 del Código Civil, establece expresamente que los actos de ca-rácter posesorio llevados a cabo en virtud de una licencia, o por mera tolerancia del dueño de una cosa, no se pueden aprovechar para cumplir con la posesión necesaria para la prescripción adquisitiva. 31 L.P.R.A. sec. 5263. Véanse, además: Sucn. Maldonado v. Sucn. Maldonado, supra, pág. 183; Vélez Cordero v. Medina, 99 D.P.R. 113 (1970); Ortiz v. Dávila, 31 D.P.R. 220 (1922). Por el contrario, tanto el Art. 1841 como el Art. 317 del Código Civil dispo-nen que la posesión que se disfruta en concepto de dueño puede servir de título para adquirir el dominio. 31 L.P.R.A. secs. 5262 y 1462. Así, por ley, el acto posesorio, o posesión civil, para adquirir mediante usucapión una cosa mueble o inmueble o derecho real debe ser en concepto de dueño de la cosa o del derecho objeto de la usucapión. Castán Tobe-ñas, op. cit., pág. 355; Puig Brutau, op. cit., pág. 368.
De la misma forma, el Código Civil exige que esa pose-sión, para que sea aplicable la usucapión, debe ser, ade-más, pública. 31 L.P.R.A. secs. 5262 y 1447. Así, pues “[l]os actos meramente tolerados y los ejecutados clandestina-mente y sin conocimiento del poseedor de una cosa, o con violencia, no afectan la posesión”. 31 L.P.R.A. sec. 1447. *880 Por ello, como expresa Vélez Torres basándose en el crite-rio del tratadista Albaladejo:
[E]s pública la posesión que no se tenga ocultamente, como ocurriría si quien la disfruta lo hace a escondidas. La publici-dad persigue el propósito de no frustrar la posibilidad de que la posesión del usucapiente llegue a ser conocida por quien podría reclamar la cosa; si se posee en forma clandestina y secreta la cosa no podría ser reclamada por su legítimo dueño y faltaría el fundamento para presumir que este la ha abandonado. J.R. Vélez Torres, Curso de Derecho Civil, 5ta ed., San Juan, Ed. U.I.P.R., 2005, T. II, págs. 273-274.
Además de los elementos necesarios de publicidad y po-sesión en concepto de dueño, la posesión exigible para la prescripción adquisitiva debe ser pacífica, según se des-prende de la intención del legislador plasmada en los Arts. 1841 y 370 del Código Civil. 31 L.P.R.A. secs. 5262 y 1444. Ello, como nos dice Castán Tobeñas, significa que la pose-sión debe ser “ganada sin violencia, ya que es norma general que en ningún caso puede adquirirse violentamente la posesión mientras exista un poseedor que se oponga a ello”. Castán Tobeñas, op. cit., pág. 355. Es decir, debe ser pacífica durante el término necesario para usucapir. Como último requisito estatuido por el legislador para la pose-sión necesaria para la prescripción adquisitiva, esta debe ser ininterrumpida por el periodo de tiempo establecido en ley. 31 L.P.R.A. sec. 5262; Sucn. Maldonado v. Sucn. Maldonado, supra, pág. 182. Véase, además, Puig Brutau, op. cit, pág. 371.
Como se sabe, el plazo o término de tiempo requerido para que se adquiera la propiedad mediante la usucapión varía según la naturaleza de la cosa y de si es una pres-cripción adquisitiva ordinaria o extraordinaria. Como nos ilustra Vázquez Bote:
Respecto de la ordinaria, ya sabemos que el plazo es diverso, según se trate de bienes muebles o inmuebles. Para los muebles, el art. 1.855, C.c., establece un plazo de tres años, *881 mientras que, tratándose de inmuebles, es necesaria una po-sesión de diez años —si es entre presentes — , y de veinte, si es entre ausentes. (Énfasis suplido.) Vázquez Bote, op. cit., pág. 380.
De igual manera, nos expresa el mismo autor que en la usucapión extraordinaria también debe diferenciarse entre la naturaleza mueble o inmueble de la cosa. “Para los mue-bles, el art. 1.855, C.c., fija un plazo de seis años; tratán-dose de inmuebles, el art. 1.859, C.c., fija un plazo de treinta años.” Id. Véase, además: Vélez Torres, op. cit., págs. 276-277. Así, el legislador estableció, en el Art. 1860 del Código Civil, las reglas mediante las cuales se computa el tiempo necesario para la prescripción. 31 L.P.R.A. sec. 5281. A tales efectos, el referido artículo preceptúa que:
(1) El poseedor actual puede completar el tiempo necesario para la prescripción, uniendo al suyo el del causante.
(2) Se presume que el poseedor actual, que lo hubiera sido en época anterior, ha continuado siéndolo durante el tiempo intermedio, salvo prueba en contrario.
(3) El día en que comienza a contarse el tiempo se tiene por entero, pero el último debe cumplirse en su totalidad. íd. véase, además, Hernández v. Caraballo, 74 D.P.R. 29 (1952).
Cónsono con estas reglas de computación, el efecto que tendrá la prescripción adquisitiva, según la naturaleza del bien y si es ordinaria o extraordinaria, consiste en la ad-quisición por el usucapiente del dominio de los demás de-rechos reales —susceptibles de posesión— sobre las cosas. Véanse: Vázquez Bote, op. cit., págs. 383-384; Castán Tobeñas, op. cit., págs. 366-370. Ahora bien, este efecto ipso iure de la usucapión no es posible si se interrumpe el término o plazo mediante el cual se posee la cosa o el de-recho en concepto de dueño de forma pública y pacífica. Por esta razón, el legislador entendió que ese plazo puede ser interrumpido de varias formas.
Como se sabe, respecto a la interrupción de la usuca-pión, el Art. 1843 del Código Civil específicamente esta-blece que la “posesión se interrumpe para los efectos de la *882 prescripción, natural o civilmente”. 31 L.P.R.A. sec. 5264. Asimismo, es el Código Civil el que dispone que la posesión se interrumpe civilmente: (1) por la citación judicial hecha al poseedor, aunque sea por mandato del tribunal o un juez incompetente; (2) mediante el requerimiento judicial o notarial, siempre que en los dos meses de practicado se pre-sente ante el tribunal o el juez la demanda sobre posesión o dominio de la cosa cuestionada, y (3) por el reconoci-miento expreso o tácito que el poseedor haga del derecho del dueño. Véanse: Arts. 1845, 1847 y 1848 del Código Civil, 31 L.P.R.A. secs. 5266, 5268 y 5269; Nissen Holland v. Genthaller, 172 D.P.R. 503, 513 (2007); Vélez Torres, op. cit, pág. 275.
De no interrumpirse el término prescriptivo para la prescripción adquisitiva, el usucapiente adquirirá el domi-nio de la cosa y, como expresa Castán Tobeñas sobre este momento, “al ganar el dominio [el usucapiente], tiene a su favor acción para reclamarlo y excepción para oponerse a las reclamaciones de los demás”. Castán Tobeñas, op. cit, pág. 366. De esta forma, como lo razona Vázquez Bote, “la usucapión produce sus efectos por sí misma; pero, como consecuencia del principio procesal de justicia rogada, es obvio que, bien mediante excepción, bien mediante ejerci-cio de la correspondiente acción, siempre que exista con-tención será necesario acreditarla, ya que los jueces no pueden aceptarla de oficio”. Vázquez Bote, op. cit, pág. 384. Véase Vélez Torres, op. cit, págs. 278-279.
B. Régimen de propiedad horizontal, el Registro de la Pro-piedad y la usucapión
Como reiteradamente hemos expresado, el régimen de propiedad horizontal está rigurosamente supeditado al re-quisito de inscripción registral. García Larrinua v. Lichtig, 118 D.P.R. 120, 128 (1986); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978). Por tal razón, como lo exige expresamente el legislador en el Art. 2 de la Ley de Con- *883 dominios, supra, para que exista el régimen de horizonta-lidad respecto a una propiedad en particular este tiene que constar inscrito en el Registro de la Propiedad. 31 L.P.R.A. sec. 1291.
Sobre este particular, el profesor Godreau Robles ha mencionado acertadamente que:
El Tribunal ha reiterado en el caso de García Larrinua v. Lichtig, lo que ya antes había manifestado en Arce, en el sen-tido de que la Ley ha establecido un verdadero sistema catas-tral, que como tal, constituye una excepción al principio de que el Registro no es garantizador de la cabida de una finca. (En-fasis en el original.) M.J. Godreau Robles, El condominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, págs. 19-20.
De esta forma, el mismo autor nos afirma que en ese sistema catastral las constancias del Registro de la Propie-dad sobre un condominio, “si bien no establecen el derecho respecto a la titularidad de cada apartamiento —asunto que de surgir controversia solo compete resolver a los tribunales— sí constituye la fuente inexpugnable sobre la configuración física de los apartamentos”. (Énfasis suplido.) Godreau Robles, op. cit., pág. 20. Por tal carácter catastral del régimen de propiedad horizontal, en García Larrinua v. Lichtig, supra, al amparo del principio de pu-blicidad registral cuando el régimen de horizontalidad queda constituido debidamente mediante inscripción, ex-presamos que:
Teniendo el Registro en cuanto dicha ley las características de un catastro, la realidad extrarregistral tiene que correspon-der con la que surge del Registro. Es por ello que el comprador de un apartamento de un edificio que está sometido al régi-men de la Ley de Propiedad Horizontal se le puede oponer e imputar, por ficción de ley, el conocimiento no solo de las cons-tancias del Registro en lo referente a la titularidad del mismo, sino que se le imputa el conocimiento de las “circunstancias particulares”, tales como cabida o superficie total, del aparta-mento individual de que se trate. García Larrinua v. Lichtig, supra, pág. 133.
*884 Cónsono con lo anterior, en ese caso expresamos que, por ficción de ley y según el principio de la fe pública re-gistral, la naturaleza catastral del régimen de horizontali-dad obliga a que al comprador, de un apartamento de un inmueble sujeto a ese régimen, se le impute el conoci-miento de la cabida o superficie del apartamento que compra. Por ende, las constancias del Registro de la Pro-piedad deben coincidir con la realidad extrarregistral de los apartamentos de un inmueble sometido al régimen de propiedad horizontal. Id.; Arce v. Caribbean Home Const. Corp., supra; Godreau Robles, op. cit., págs. 20-21; N. Rosado Figueroa y A.L. Córdova, Aspectos regístrales en la constitución del régimen de propiedad horizontal y su ca-rácter catastral, 63 Rev. Jur. U.P.R. 857 (1994).
Ahora bien, es preciso aclarar la relación y viabilidad, al amparo del carácter catastral del régimen de propiedad horizontal, de la prescripción adquisitiva en ese régimen. Esto, pues como afirma ciertamente el Prof. Luis Muñiz Argüelles, este Tribunal en varias ocasiones “ha insinuado que el régimen de propiedad horizontal puede alterarse mediante la usucapión”. L. Muñiz Argüelles, Derechos reales y derecho inmobiliario registral, 77 Rev. Jur. U.P.R. 629, 638 (2008).(2) De esta forma, el profesor Muñiz Argüelles entiende que si en realidad el régimen de propiedad horizontal está supeditado a un sistema catastral, no es posible que mediante la usucapión se adquieran o modifiquen de-rechos sin inscripción. Así, el mismo autor expresa que “[d]ecir que se pueden adquirir derechos sobre bienes no previamente individualizados o que se puede variar el uso de una unidad sin inscripción es negar la característica catastral que se proclama”. Id.
Por su parte, el profesor Godreau Robles tiene un crite-rio muy distinto sobre la aplicación de la usucapión en el *885 régimen de propiedad horizontal. Así, y comentando el tó-pico, el autor nos menciona que:
Ni siquiera el carácter catastral que se le ha reconocido a nuestro régimen, conforme los casos de Arce y García Larrinua v. Lichtig, debe interpretarse como obstáculo a la usucapión. La prescripción adquisitiva tiene que ver con la ti-tularidad y no con la configuración física o material del área en cuestión. (Enfasis en el original y suplido.) M. Godreau Robles, La privatización de los elementos comunes en los condo-minios: reflexiones en torno a posibles enmiendas a la Ley de Propiedad Horizontal, 66 Rev. Jur. U.RR. 149, 171-172 (1997).
De igual forma, el tratadista Juan V. Fuentes Lojo, co-mentando la posibilidad de la usucapión en el régimen de horizontalidad en España, nota que “[l]a doctrina estima que es posible la adquisición de la propiedad del aparta-mento por usucapión, ya que ha de regirse por las normas comunes”. J.V. Fuentes Lojo, Novísima suma de la propie-dad horizontal, Barcelona, Ed. Bosch, 1998, T. I, pág. 379. De esta forma, nos explica el mismo autor:
Todos los inconvenientes que se podrían alegar para tal usu-capión, provenientes de la doctrina tradicional referente a la comunidad de bienes, en el sentido de que nunca un comunero puede usucapir con independencia la parte indivisa correspon-diente a los demás ... carecen de aplicación en este régimen especial por la naturaleza de verdadera propiedad individual que tiene. Id.
A base de los análisis mencionados, entendemos que no hay nada en la Ley de Condominios, supra, que obstaculice que se adquiera la propiedad mediante la prescripción ad-quisitiva, aun contra las constancias del Registro de la Propiedad. Tampoco creemos que el carácter catastral que anunciamos y reiteramos en la jurisprudencia reseñada obste para que, de cumplirse con los elementos de la usuca-pión, se pueda usucapir un bien o derecho en un inmueble sometido al régimen de horizontalidad.
Habiendo aclarado este asunto, es pertinente repasar la *886 prescripción adquisitiva y sus consecuencias respecto al Registro de la Propiedad. Primeramente, es preciso notar que, de ordinario, hay dos modalidades mediante las cua-les la usucapión se relaciona con las constancias del Regis-tro de la Propiedad, a saber, la prescripción conforme al Registro, o secundum tabulas, y la usucapión contra el Re-gistro, también conocida como contra tabulas. Vázquez Bote, op. cit, T. XV, págs. 229-235. Véase, además, R. Roca Sastre y otros, Derecho Hipotecario, 9na ed., Barcelona, Ed. Bosch, 2008, T. II, Vol. 2, págs. 425-479.
Sobre la usucapión conforme al Registro de la Propie-dad, el Art. 106 de la Ley Hipotecaria establece que “[a] los efectos de la prescripción adquisitiva en favor del titular inscrito, será justo título la inscripción, y se presumirá que aquél ha poseído pública, pacífica, ininterrumpidamente y de buena fe durante el tiempo de vigencia del asiento y de los de sus antecesores de quienes traiga causa”. 30 L.P.R.A. sec. 2356. Como nos comenta Vázquez Bote, esa disposi-ción de ley es un complemento de los actos jurídicos defectuosos. A saber, nos dice el autor, “[q]uien es titular registral, pero por un defecto de su título, podría ser des-alojado del Registro, no solamente puede invocar la usuca-pión extrarregistral, sino la propia que opera con funda-mento en los asientos regístrales, facilitando así la subsanación de aquel acto en otro caso impugnable”. Váz-quez Bote, op. cit, pág. 229.
Por otro lado, como regla general, es el Art. 107 de la Ley Hipotecaria, 30 L.P.R.A. 2357, que tiene su equiva-lente en el Art. 36 de la Ley Hipotecaria de España, el que regula lo referente a la prescripción contra el Registro. Ci-tando al reconocido tratadista Roca Sastre, el profesor Váz-quez Bote, mediante una crítica a la redacción del referido artículo, menciona que:
La regla general citada por el eminente jurista español es: que se pueden usucapir bienes registrados, con perjuicio de su *887 titular, conforme con las normas del más puro Derecho civil. Todo derecho susceptible de posesión es usucapible. Por ello, entre el que prescribe y el dueño del inmueble, y sus sucesores que no sean terceros protegidos, se califica el título y se com-puta el plazo conforme con ese Derecho civil. Vázquez Bote, op. cit., págs. 234-235.
Dicho esto, el Art. 107 de la Ley Hipotecaria, supra, es-tablece una excepción al principio de imprescriptibilidad que postula que no puede adquirirse un derecho real sobre un inmueble debidamente inscrito en el Registro, como efectivamente es en jurisdicciones como Alemania o Suiza. Véase Rivera Rivera, op. cit., pág. 180. Como surge de la disposición, pueden usucapirse bienes inscritos en el Regis-tro a favor de una persona distinta al usucapiente. No obs-tante ello, el legislador pretendió proteger a un tercero que adquirió confiando en las constancias del Registro y, ade-más, que cumpla con los requisitos elementales de fe pú-blica registral, que no haya conocido ni pudo conocer la usucapión en curso y que no la haya consentido. íd., págs. 181-182; Atanacia Corp. v. J.M. Saldaña, Inc., 133 D.P.R. 284 (1993). Tal como lo dispone la ley, ese tercer adquirente de un derecho real que implique posesión prevalecerá ante un usucapiente si ejercita la correspondiente acción en el año siguiente a la adquisición. 30 L.RR.A. sec. 2357. Véanse, además: Roca Sastre, op. cit., págs. 451-467; Rivera Rivera, op. cit., pág. 181-182; Vázquez Bote, op. cit., 236-240.
C. La usucapión de los elementos comunes y privativos
Así las cosas, como bien señala la opinión del Tribunal en el caso de autos, de la Ley de Condominios emana un esquema de división de elementos comunes que son regu-lados detalladamente por los preceptos correspondientes de ese estatuto. Ello así, es forzoso concluir que el legisla-dor deseó excluir determinados elementos de la estructura de un inmueble sometido al régimen de horizontalidad para que fuesen propiedad pro indiviso de todos los titula- *888 res del inmueble. Como lo expresa el profesor Godreau Robles:
[s] abemos que respecto a las áreas comunes —que no son pro-piedad del Consejo de Titulares pues le pertenecen en común pro indiviso a los titulares— se establece la indivisión forzosa de las mismas y, además, su enajenación, en las áreas que la ley lo permite, debe hacerse por voto unánime. Esa es una de las consecuencias inevitables de la indivisión y de la no apli-cabilidad al régimen de las normas sobre la copropiedad. M. Godreau Robles, Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directo-res y del Presidente para llevar acciones a nombre del condo-minio, 64 Rev. Jur. U.P.R. 481, 483 (1995).
De esta forma, la Ley de Condominios es muy clara al establecer varias clasificaciones de elementos comunes, a saber: (1) los elementos comunes generales necesarios, 31 L.RR.A. sec. 1291i(a); (2) los elementos comunes generales, detallados en el inciso (b) de la misma sección, 31 L.RR.A. sec. 1291i(b); (3) los elementos comunes limitados, 31 L.RR.A. sec. 1291j, y (4) los estacionamientos comunes, cuando sean considerados elementos comunes, 31 L.P.R.A. sec. 12911— 1. Véase, además, Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475 (2008). Respecto a los elementos comunes generales necesarios, el legislador estableció que “cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo”. 31 L.P.R.A. sec. 1291i(a)(6). Esto, pues esa clasificación de elementos comunes, por imperativo de ley, no son susceptibles de pro-piedad individual por los titulares y están sujetos a un ré-gimen de indivisión forzosa. Id.
De igual manera, la Ley de Condominios establece que, sobre los elementos comunes generales,
[a]un cuando las áreas enumeradas anteriormente bajo este inciso (b) sean susceptibles de aprovechamiento indepen-diente, no podrán constituirse o enajenarse como áreas priva-das, sino para el beneficio del Consejo de Titulares o de uno o *889 varios de los titulares de apartamientos o unidades en el condominio. 31 L.P.R.A. sec. 1291i(b).
Esto parte de que, según la intención legislativa plas-mada en el mismo artículo, cuando se enumeran los ele-mentos comunes generales en la ley se hace la salvaguarda que se considerarán como tales esos elementos “salvo dis-posición o estipulación en contrario”. (Enfasis suplido.) 31 L.P.R.A. sec. 129li. Véase, además, Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225 (2001). Así, pues, el ele-mento común general que se diferencia del elemento co-mún general necesario, porque puede pertenecer a uno o varios titulares o condominos, tendrá tal clasificación a menos que en los documentos constitutivos del régimen se estipule o disponga lo contrario. 31 L.P.R.A. sec. 1291i(b); M.J. Godreau Robles, La Nueva Ley de Condominios: guía básica para entender el régimen de la propiedad horizontal según la Ley 103 del 5 de abril de 2003, San Juan, Ed. Dictum, 2003, págs. 56-57.
Asimismo, el Art. 14-A de la Ley de Condominios, supra, contempla que los estacionamientos del inmueble sean considerados elementos comunes si así se dispone en los documentos constitutivos del régimen. 31 L.P.R.A. sec. 1291Z-1. En ese artículo se especifica detalladamente cómo se utilizará aquel espacio o finca considerada como ele-mento común del inmueble. Id. De esta forma, el legislador entendió que era propio concederle a los condominos la oportunidad de establecer una cantidad de estacionamien-tos como elementos comunes del inmueble y no como fincas o espacios privativos de los apartamentos de este. Id.
Por otro lado, los elementos comunes limitados son aquellos que ostentan la naturaleza de común, pero que pueden ser destinados a un número de apartamentos con exclusión de los demás. Arce v. Caribbean Home Const. Corp., supra, pág. 238 (1978). De esta forma, el Art. 12 de la Ley de Condominios, supra, preceptúa que “[t]ambién serán considerados elementos comunes, pero con carácter *890 limitado, siempre que así se acuerde expresamente por la totalidad de los titulares del inmueble, aquellos que se des-tinen al servicio de cierto número de apartamientos con exclusión de los demás”. (Enfasis nuestro.) 31 L.P.R.A. sec. 129lj. Ante tal lenguaje, se desprende que el legislador quiso condicionar y regular la clasificación de este tipo de elemento aprovechable por solo un número limitado de apartamentos a que, y si y solo si, la totalidad de los con-dominos lo acordaran de esa manera. Asimismo, el legisla-dor fue enfáticamente claro en el Art. 13 de la Ley de Con-dominios, supra, al establecer que “[l]os elementos comunes, generales y limitados, se mantendrán en indivi-sión forzosa y no podrán ser objeto de la acción de división de la comunidad. Cualquier pacto en contrario será nulo”. (Énfasis suplido.) 31 L.P.R.A. sec. 1291k.
Como hemos visto, y como correctamente concluye la opinión mayoritaria en este caso, los elementos comunes reseñados tienen una regulación específica en el esquema que establece la Ley de Condominios. Ese esquema tiene como propósito el que estos elementos comunes, salvo pacto en contrario cuando se trate de elementos comunes generales y elementos comunes limitados o estacionamien-tos comunes, se mantengan en indivisión forzosa y que no sean objeto de la acción de división de la comunidad. Por ende, al amparo del sistema catastral que reiteradamente le hemos reconocido al régimen de propiedad horizontal en nuestra jurisdicción, entendemos que los bienes comunes enumerados y altamente regulados por la Ley de Condomi-nios no son susceptibles a ser adquiridos mediante la pres-cripción adquisitiva o usucapión. No obstante lo anterior, ese sistema catastral, según el silencio legislativo al res-pecto en la Ley de Condominios, no obsta para que una persona adquiera mediante usucapión una finca privativa o un derecho susceptible de apropiación sobre esta en un bien sometido al régimen de propiedad horizontal.
*891 Dicho esto, coincidimos con las expresiones de la opinión mayoritaria al exponer que, con relación a las unidades privativas que integran el inmueble, no hay duda de que estas pueden ser objeto de prescripción adquisitiva. Esto, pues el Art. 4 de la Ley de Condominios, supra, así lo reco-noce al disponer que estas fincas independientes pueden ser objeto de dominio y posesión y de toda clase de actos jurídicos con libertad total del resto del inmueble.
Además, coincidimos con la opinión mayoritaria cuando establece que no puede proclamarse un cambio en la titu-laridad de un elemento común sin que ello conlleve un cambio en el destino y uso de este, el cual demanda el consentimiento unánime , de los titulares. Nos parece que eso reafirma el hecho de que no podrán adquirirse por prescripción adquisitiva los elementos comunes. Sin embargo, encontramos contradictorio que la opinión exprese, con el propósito de aclarar, que las unidades privativas sí puedan ser objeto de usucapión, pero ello no podrá afectar el destino o la naturaleza privativa del bien. Es decir, con-cluye que las unidades privativas solo podrán ser adquiri-das por usucapión por otro titular o un tercero, siempre que se mantenga el uso privativo. Diferimos en condicionar la posibilidad de adquirir unidades privativas por prescrip-ción adquisitiva a que el poseedor lo use para el mismo uso privativo. Entendemos que los requisitos expuestos en el Código Civil y discutidos anteriormente sobre la prescrip-ción adquisitiva, de posesión civil, pacífica, pública e inin-terrumpidamente, y el Art. 4 de la Ley de Condominios, supra, permiten el acto jurídico de usucapir sin más limitaciones.
D. Consejo de Titulares y los elementos procomunales
Aclarado lo anterior, discrepamos de la interpretación que hace una mayoría de este Tribunal sobre la inaplicabi-lidad de la figura de la usucapión cuando quien está usu-capiendo un elemento o bien privativo es el consejo de ti- *892 tulares de un inmueble sometido al régimen de horizontalidad.
El Art. 38 de la Ley de Condominios establece que el Consejo de Titulares es la autoridad suprema del régimen de propiedad horizontal y que tiene personalidad jurídica propia. 31 L.P.R.A. sec. 1293b. Ello sin olvidar que el Art. 1-A de la misma ley establece que el principio primordial del régimen de propiedad horizontal es propiciar el dis-frute de la propiedad privada. 31 L.P.R.A. sec. 1291a. Por ello, se decretó la personalidad jurídica del consejo de titu-lares, para ayudar a fortalecer el régimen de propiedad horizontal. Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978); Asociación Pórticos v. Compad, 163 D.P.R. 510 (2004).
Al así reconocerse, sostuvimos que ello convierte al re-ferido cuerpo en un auténtico sujeto de derecho con perso-nalidad plena en el ámbito de sus finalidades. Arce v. Caribbean Home Const. Corp., supra, pág. 253. “Como podemos apreciar, esta personalidad jurídica que, con-forme a sus fines, se le reconoce en nuestro ordenamiento jurídico al Consejo de Titulares, se fundamenta no solo en la potencialidad de un patrimonio propio distinto al de los propietarios individuales de los apartamientos que compo-nen el inmueble, sino además, en el reconocimiento de que tiene intereses, deberes y finalidades distintas a las de los titulares individuales, las cuales pueden ser contrarias y contradictorias a las de determinados titulares en su ca-rácter personal”. (Énfasis suplido y escolio omitido.) Cond. Prof. S.J. H. Centre v. P.R.F., Inc., 133 D.P.R. 488, 497 (1993). Véase D.A.Co. v. Junta Cond. Sandy Hills, 169 D.P.R. 586 (2006).
Por ello, “se justifica la concesión de la personalidad ju-rídica a una colectividad cuando: (1) [t]enga una función o finalidad distinta a la de los particulares que la integran; (2) [l]os procesos decisionales de la colectividad se efectúen a base de criterios distintos al de esos individuos; y
*893 (3) [p]ueda identificarse un patrimonio, o la posibilidad de este, propio de la colectividad, desvinculado del de los particulares”. Cond. Prof. S.J.H. Ctr. v. P.R.F., Inc., supra, pág. 498, citando a M.J. Godreau, El Condominio, op. cit., págs. 31-37. Precisamente, con este propósito es que se le confirió personalidad jurídica propia a la colectividad del consejo de titulares del régimen de propiedad horizontal.
Asimismo, hemos establecido que parte del patrimonio del consejo de titulares lo componen los elementos proco-munales establecidos en el Art. 11-A de la Ley de Condo-minios que expresa que
[s]erán elementos procomunales aquellas áreas susceptibles de aprovechamiento independiente, sean apartamientos, esta-cionamientos o locales, cuya titularidad le haya sido asignada al Consejo de Titulares. Lo serán también las unidades priva-das que adquiera el Consejo de Titulares mediante cesión, eje-cución en cobro de deudas o por cualquier otro medio legítimo. (Énfasis suplido.) 31 L.P.R.A. sec. 1291Í-1.
Es decir, el propio artículo que establece las formas de adquisición de unidades privadas por parte del consejo de titulares permite hacerlo por cualquier medio legítimo. Además, reconoce que se pueda convertir a procomunal un área susceptible de uso privativo. Por lo tanto, la prescrip-ción adquisitiva podría ser una de las formas legítimas dado que, como bien reconoce la opinión de este Tribunal, es avalada por la Ley de Condominios.
Diferimos en que las unidades privativas pueden ser ad-quiridas mediante prescripción adquisitiva siempre que no sea por el consejo de titulares. Dado que este órgano es la autoridad suprema y tiene como principio fundamental mejorar y propiciar el régimen de propiedad horizontal, en-tendemos que redundaría en parte del beneficio común que sea este órgano el que adquiera el bien objeto de controver-sia en el caso, y no otro titular o un extraño. Ello armoniza con la intención expuesta de otorgarle personalidad jurí-dica a esa colectividad.
La opinión mayoritaria entiende que permitirle al con- *894 sejo de titulares la potestad de adquirir por prescripción adquisitiva parte de los bienes privativos en el régimen de propiedad horizontal, que le corresponde proteger, atenta contra la naturaleza misma de ese ente. Conforme a lo ex-puesto, de la jurisprudencia y de la disposición de ley que le otorga la personalidad jurídica al consejo de titulares es evidente que el propósito es desligar las finalidades de los titulares de las del consejo de titulares, así como el patrimonio. Por ello, diferimos en que pueda existir un conflicto en cuanto a la protección del condominio o del propio régimen de propiedad horizontal por el hecho de que el consejo de titulares adquiera una unidad privativa. En-fatizamos que, el Art. 11-A de la Ley de Condominios, supra, le permite adquirir unidades privativas por cualquier medio legítimo y aun con ese bien le seguirá correspon-diendo la administración del condominio.
En fin, las facultades y prerrogativas del consejo de ti-tulares responden a la buena administración del condominio. En vista de ello, cómo puede concluir la mayo-ría de este Tribunal que adquirir —mediante prescripción adquisitiva— el armario de los contadores y las tuberías de desagüe atenta contra las funciones del consejo o contra, el régimen de propiedad horizontal cuando llevan desde 1969 utilizándolo en beneficio de los titulares y en respuesta a sus obligaciones de hacer viable el disfrute de los apartamentos.
I — i HH j.
En virtud de los fundamentos que anteceden, disenti-mos de la Opinión mayoritaria de que el Consejo de Titu-lares no puede ser el que adquiera por prescripción adqui-sitiva un bien privativo. Más aún, la mayoría de este Tribunal entiende que “[l]a problemática de reubicar o lle-gar a un acuerdo para la ubicación de los contadores eléc-tricos no es justificación para conceder una protección po- *895 sesoria al consejo de titulares Opinión mayoritaria, pág. 861. Con esto, resuelve y aclara que los esposos Bra-vman-González y el consejo de titulares del Condominio Palma Real pueden continuar con su problemática fuera de nuestro Poro.
Como afirmó el Tribunal de Apelaciones en este caso, que la Ley de Condominios establece que el destino y los usos de los bienes de un inmueble sometido al régimen se pueden variar con el consentimiento unánime de los condominos. No obstante lo anterior, guarda silencio sobre la posibilidad de que la propiedad y el dominio de un bien, con los derechos que ello acarrea, pueda ser adquirida me-diante la prescripción adquisitiva que, como expresamos anteriormente, es un medio de adquisición del dominio de una cosa o derecho. Al no expresar prohibición alguna a la aplicación de la usucapión sobre bienes de un inmueble so-metido al régimen de horizontalidad, es forzoso concluir que la prescripción adquisitiva, tal como la regula nuestro Código Civil, es viable en este tipo de régimen especial. En otras palabras, no hay contradicción entre la Ley de Con-dominios y las disposiciones del Código Civil sobre pres-cripción adquisitiva.
Como vimos, el consejo de titulares tiene personalidad jurídica propia y puede adquirir unidades privadas. Así las cosas, analicemos si en este caso cumplió con los requisitos de la prescripción adquisitiva para adquirir el dominio del armario en controversia. En primer lugar, es evidente que el Consejo de Titulares no tiene justo título ni buena fe, pues los documentos constitutivos del régimen de propie-dad horizontal sobre el Condominio establecen que ese ar-mario es parte del apartamento 1-G, destinado a uso privativo. Por lo tanto, el consejo de titulares solo podía usucapir el bien mediante la prescripción adquisitiva ex-traordinaria y contra las constancias del Registro.
Según se desprende de los hechos tomados como ciertos por los foros inferiores, el consejo de titulares ha poseído y *896 utilizado el referido armario para colocar contadores de energía eléctrica, desagües y tuberías desde 1969. El ac-ceso de ese armario al apartamento 1-G fue eliminado y se creó un acceso por el lado contrario del armario para que la Autoridad de Energía Eléctrica pudiera entrar a revisar los seis contadores de luz que se colocaron originalmente. Según los hechos del caso, el consejo de titulares ha utili-zado y administrado este armario en concepto de dueño, no como poseedor con licencia, permiso o por mera tolerancia de los titulares regístrales del apartamento 1-G. De hecho, el propietario original del apartamento, FM Investment Corp., nunca tuvo acceso al armario. Por tal razón, enten-demos que el consejo de titulares satisface el requisito de poseedor civil necesario para que sea aplicable la usuca-pión en este caso. Cabe añadir que, diferimos de la conclu-sión a la que llega la mayoría de este Foro al decir que el consejo de titulares actuó en capacidad representativa. Por lo discutido sobre el poseedor civil y los fundamentos y propósitos de la personalidad jurídica propia e indepen-diente del Consejo de Titulares, no estamos de acuerdo.
Asimismo, según la prueba testifical tomada como cierta por el foro primario, el Consejo de Titulares ha po-seído ese armario de forma pública. Es de notar que, la Sra. Yolanda Passalacqua, quien ha residido ininterrumpi-damente desde noviembre de 1969 en el Condominio, tes-tificó que el armario siempre se ha utilizado para albergar contadores de luz, desagües y tuberías de agua. Además, surge del expediente que la posesión en concepto de dueño y de forma pública se realizó sin violencia alguna. No con-tamos con prueba que nos indique lo contrario.
Habiendo establecido que el consejo de titulares ha po-seído el armario en concepto de dueño, de forma pública y pacífica, es necesario determinar si lo ha poseído de esta manera ininterrumpidamente. Como se dijo anterior-mente, el dueño original del apartamento presentó en 1993 una demanda ante el foro primario en la que le imputó al *897 consejo de titulares que estaban utilizando un armario de su apartamento para fines comunales. El Tribunal de Pri-mera Instancia, sin embargo, desestimó, mediante senten-cia, la demanda por el incumplimiento reiterado de la parte demandante y por inactividad. Por tal razón, según hemos interpretado el Art. 1846 del Código Civil, supra, no basta con que se inicie un pleito contra el reclamante de dominio para que ocurra la interrupción civil, sino que se requiere que el demandante prosiga su caso hasta una ter-minación victoriosa. Véanse: Sucn. Rosa v. Sucn. Jiménez, 77 D.P.R. 551 (1954); Ex parte Reyes; Rodríguez, Opositora, 68 D.P.R. 854 (1948). Por ende, al haberse desestimado la causa de acción presentada por FM Investment Corp., por inactividad e incumplimiento craso ante ese foro, es forzoso concluir que el término de treinta años, contados desde 1969, para adquirir el armario mediante la prescripción adquisitiva extraordinaria nunca se interrumpió.
A base de lo expresado, entendemos que el consejo de titulares del Condominio poseyó el armario por más de treinta años en concepto de dueño, pública, pacífica e inin-terrumpidamente, por lo que adquirió su dominio. Lo ad-quirió en cumplimiento de los requisitos especificados en la ley sobre prescripción adquisitiva extraordinaria y contra las constancias del Registro de la Propiedad. Así las cosas, los esposos Bravman-González adquirieron el apartamento 1-G en junio de 2001, mientras que presentaron la pre-sente demanda en junio de 2003, dos años luego de adqui-rido el apartamento. Cónsono con nuestro ordenamiento registral inmobiliario, estos no pueden alegar tercería re-gistral y así impugnar la usucapión consumada, por haber presentado su acción dos años después de adquirido el apartamento.
Resuelto que el consejo de titulares adquirió el dominio sobre el armario en cuestión, entendemos que podían ha-cerlo en virtud de su personalidad jurídica y del Art. 11-A *898 de la Ley de Condominios, supra, que trata sobre su patri-monio:
Serán elementos procomunales aquellas áreas susceptibles de aprovechamiento independiente, sean apartamentos, esta-cionamientos o locales, cuya titularidad le haya sido asignada al Consejo de Titulares. Lo serán también las unidades priva-das que adquiera el Consejo de Titulares mediante cesión, eje-cución en cobro de deudas o por cualquier otro medio legítimo. (Enfasis suplido.) Id.
Asimismo, como se expresa en la See. 1291Í-1 de la Ley de Condominios, supra, las áreas susceptibles de aprove-chamiento independiente, como el armario en este caso, serán elementos procomunales al ser adquiridos por el Consejo de Titulares mediante cualquier medio legítimo. Por ello insistimos en que el consejo de titulares adquirió el dominio del armario mediante la usucapión extraordina-ria, por lo que debemos concluir que ese armario lo ad-quiere como bien procomunal del Condominio. Contrario a lo que decide la opinión mayoritaria, el mismo artículo per-mite el cambio a procomunal de un área susceptible de aprovechamiento independiente.
No obstante, con la opinión que hoy emite una mayoría de esta Curia, se pone en entredicho el funcionamiento del régimen de propiedad horizontal y la convivencia de una comunidad que se verá forzada a adquirir de los peticiona-rios el derecho a continuar teniendo acceso a los servicios básicos, o a reubicar a su costo esos servicios. El remedio, o la falta de, que ofrece la opinión no solo nos parece inco-rrecto sino injusto, dada las circunstancias particulares del caso. Por todo lo anterior, confirmaríamos la sentencia emitida por el Tribunal de Apelaciones, y ordenaríamos la desestimación de la demanda presentada por los peticiona-rios ante el Tribunal de Primera Instancia.

 En 2004, el Tribunal de Primera Instancia desestimó la causa de acción contra Metropolitan Builders, Inc.

 Es importante notar que el profesor Muñiz Argüelles se refiere a los casos Álvarez Figueredo v. González Lamela, 134 D.P.R. 374 (1993), Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225 (2001), y Nissan Holland v. Genthaller, 172 D.P.R. 503 (2007).